**DICK'S LAST RESORT OF the WEST END, INC., Dick's Last Resort of Dallas, Inc., Dick's Last Resort of Texas, Inc., Dick's Last Resort of Chicago, Inc., Dick's Holding Company, Inc., and Steven Schiff, Appellants,**

v.

**MARKET/ROSS, LTD. and William H. Nabors, Appellees.**

No. 05–07–01220–CV.

Court of Appeals of Texas, Dallas.

Dec. 31, 2008.

Tom Thomas, Beth Ann Blackwood, Thomas & Blackwood, LLP, Dallas, TX, for Appellants.

A. Erin Dwyer, Figari Davenport & Graves, L.L.P., Dennis M. Lynch, Figari & Davenport, Parker D. Young, Dallas, TX, for Appellees.

Before Justices MORRIS, WHITTINGTON, and O'NEILL.

## OPINION

Opinion by Justice WHITTINGTON.

Appellants Dick's Last Resort of the West End, Inc. (Dick's West End), Dick's Last Resort of Dallas, Inc. (Dick's Dallas), Dick's Last Resort of Texas, Inc. (Dick's Texas), Dick's Last Resort of Chicago, Inc. (Dick's Chicago), Dick's Holding Company, Inc. (Dick's Holding Company), and Steven Schiff appeal the trial court's judgment on a jury verdict in favor of appellees Market/Ross, Ltd. and William H. Nabors. In seven issues, appellants allege error in the submission of alter ego and single business enterprise issues to the jury,[1] and

---

1. The Texas Supreme Court recently held "the single business enterprise liability theory ... will not support the imposition of one corporation's obligations on another." *SSP Partners & Metro Novelties, Inc. v. Gladstrong Invs. (USA) Corp.*, 52 Tex. Sup.Ct. J.95, 102, 275 S.W.3d 444, 2008 WL 4891733 (Tex. Nov.14, 2008), *available at* http://www.supreme.courts.state.tx.us/historical/2008/nov/050721.pdf. Here, the jury found certain appellants responsible for Market/Ross's dam-

contend the trial judge erred by granting Market/Ross's motion for directed verdict on appellants' counterclaims and refusing to submit appellants' affirmative defenses to the jury. Appellants also contend there is an irreconcilable conflict in the jury's answers, and allege the trial judge erred by failing to require that appellees allocate their evidence of attorney's fees. We affirm the trial court's judgment.

## Background

In 1986, Market/Ross and a predecessor of Dick's Dallas entered into a lease agreement to operate a restaurant in a building owned by Market/Ross. In 1999, Market/Ross, Dick's Dallas, and Dick's West End entered into an agreement to extend the lease until December 31, 2009, under which Dick's West End became the substitute tenant. This agreement, the Fourth Amendment of Office Building Lease and Assignment, is the basis for much of the parties' dispute. In 2000, Dick's Chicago signed a written guaranty of the lease. In 2005, the restaurant was relocated and rent payments ceased. Market/Ross sued Dick's West End for breach of the lease and Dick's Chicago for breach of the guaranty, and alleged Dick's Texas, Dick's Holding Company, and Schiff were responsible for its damages under theories of corporate veil piercing. Appellants asserted a counterclaim against appellees, alleging they were fraudulently induced into extending the lease.

The case proceeded to trial, and the trial judge granted Market/Ross's motion for directed verdict on appellants' counterclaim. The jury answered questions favorable to Market/Ross on all issues.

## Actual fraud

Appellants' first, fourth, and fifth issues are premised on the contention that "actual fraud" for purposes of piercing the corporate veil must be proven by obtaining findings on the traditional elements of common law fraud by misrepresentation or omission. We disagree and conclude the applicable standard, set forth in article 2.21 of the Texas Business Corporation Act, was properly submitted to the jury. *See* TEX. BUS. CORP. ACT ANN. art. 2.21(A)(2) (Vernon 2003).[2]

We note at the outset that Market/Ross sought to recover for breach of contract, not fraud. While article 2.21 applies equally to contract and tort cases, *see* TEX. BUS. CORP. ACT ANN. art. 2.21 cmt. at 177–78 (Vernon 2003), its provisions control when a plaintiff seeks to disregard a corporation's structure and hold another entity responsible for the corporation's obligations. *See SSP Partners,* 52 Tex. Sup. Ct. J. at 98. The liability of the corporation itself for the underlying obligation is not controlled by article 2.21. Here, Market/Ross claims Dick's West End and Dick's Chicago breached a written lease agreement and a guaranty. Market/Ross sued to recover amounts it claims it is owed under these agreements. Mar-

ages on three theories in addition to single business enterprise.

**2.** Article 2.21 expires January 1, 2010, and its text will be found in TEX. BUS. ORGS.CODE § 21.223. Article 2.21 provides in part:

A. A holder of shares ... or any affiliate thereof or of the corporation, shall be under no obligation to the corporation or to its obligees with respect to: ...

(2) any contractual obligation of the corporation ... on the basis that the holder, owner, subscriber, or affiliate is or was the alter ego of the corporation, or on the basis of actual fraud or constructive fraud, a sham to perpetrate a fraud, or other similar theory, unless the obligee demonstrates that the holder, owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, owner, subscriber, or affiliate ...

ket/Ross did not attempt to set aside the lease or the guaranty on the basis of fraud or claim the agreements were induced by fraud. Market/Ross does not seek damages for fraud. But Market/Ross does seek to impose the contractual liability of Dick's West End and Dick's Chicago on Dick's Holding Company, Dick's Texas, and Schiff because they allegedly used the contracting entities to perpetrate an actual fraud. *See* TEX. BUS. CORP. ACT ANN. art. 2.21(A)(2). Market/Ross did not allege separate substantive causes of action against Dick's Holding Company, Dick's Texas, or Schiff. *See Cox v. S. Garrett, L.L.C.,* 245 S.W.3d 574, 582 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (various doctrines for piercing corporate veil are not substantive causes of action; rather, they are means of imposing on an individual a corporation's liability for an underlying cause of action). With this clarification, we address appellants' issues.

In their fourth issue, appellants contend Market/Ross waived "its alter-ego and single business enterprise claims" by failing to request instructions or definitions that properly defined "actual fraud," because article 2.21(A)(2) requires proof of "fraud by misrepresentation, or fraud by omission." In Instruction No. 4 of the jury charge, the trial judge instructed the jury that " 'actual fraud' involves conduct involving either dishonesty of purpose or intent to deceive." This instruction is included in the comments to the pattern jury charges for piercing the corporate veil, and is attributed to the opinion in *Castleberry v. Branscum,* 721 S.W.2d 270, 273 (Tex. 1986). *See, e.g.,* STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES, BUSINESS, CONSUMER, INSURANCE, EMPLOYMENT PJC 108.2 cmt. at 191 (2006 ed.). The supreme court recently discussed *Castleberry* and article 2.21 in *SSP Partners,* noting, "[w]e have held that the limitation on liability afforded by the corporate structure can be ignored only 'when the corporate form has been used as part of a basically unfair device to achieve an inequitable result.' " *SSP Partners,* 52 Tex. Sup.Ct. J. at 99 (quoting *Castleberry,* 721 S.W.2d at 271). The court emphasized that abuse of the corporate structure resulting in injustice is required in order to pierce the corporate veil. *SSP Partners,* 52 Tex. Sup.Ct. J. at 101. In addition, article 2.21 requires proof that the "holder, owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, owner, subscriber, or affiliate." TEX. BUS. CORP. ACT ANN. art. 2.21(A)(2); *see Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.,* 237 S.W.3d 379, 389 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (insufficient evidence of alter ego where no evidence of direct personal benefit to owner resulting from fraud).

We acknowledge that courts have sometimes used the elements of common law fraud by misrepresentation or omission in reviewing the sufficiency of the evidence to support a finding of alter ego. *See, e.g., Menetti v. Chavers,* 974 S.W.2d 168, 174 (Tex.App.-San Antonio 1998, no pet.); *Cass v. Stephens,* 156 S.W.3d 38, 59 (Tex. App.-El Paso 2004, pet. denied), *cert. denied,* —— U.S. ——, 128 S.Ct. 115, 169 L.Ed.2d 26 (2007). However, we believe the pattern jury charge approach of instructing the jury using the wording of article 2.21 is appropriate, especially in light of the statute's provision that it is the exclusive method for imposing liability on a shareholder or affiliate. *See* TEX. BUS. CORP. ACT ANN. art. 2.21(B) ("The liability of a holder, owner, or subscriber of shares of a corporation or any affiliate thereof or of the corporation for an obligation that is limited by Section A of this article is exclusive and preempts any other liability imposed on a holder, owner, or

subscriber of shares of a corporation or any affiliate thereof or of the corporation for that obligation under common law or otherwise ...."). As the supreme court has noted, "[s]ince 1993, article 2.21 has provided that, with certain exceptions ..., section A of article 2.21 is the exclusive means for imposing liability on a corporation for the obligations of another corporation in which it holds shares." *S. Union Co. v. City of Edinburg*, 129 S.W.3d 74, 87 (Tex.2003); *see also* TEX. BUS. CORP. ACT ANN. art. 2.21 cmt. at 176–78 (Vernon 2003) ("In response to *Castleberry*, Article 2.21 of the TBCA was amended in 1989 to establish a clear legislative standard under which the liability of a shareholder for the obligations of a corporation is to be determined in the context of contractual obligations and all matters relating thereto.... Thus, in respect of claims relating to contractual obligations or arising from contractual obligations, Article 2.21 sets forth the exclusive standard that must be met in order to pierce the corporate veil.").

■ We do not agree with appellants' argument that applying the standard set forth in article 2.21 would prohibit "everyday business negotiations." Appellants urge the statutory standard is too vague to determine the conduct that is prohibited, and argue that any puffing of a product might be determined by a jury to be "conduct involving intent to deceive" or "dishonesty of purpose." Here, however, the jury was instructed to consider far more than everyday business negotiations or dishonest conduct. In the alter ego question, for example, the jury was required to find that "Dick's West End was organized and operated as a mere tool or business conduit;" there was such unity between the

corporations that "holding only Dick's West End responsible would result in injustice;" and the defendant to be held responsible "caused Dick's West End to be used for the purpose of and did perpetrate an actual fraud on Market/Ross primarily for the direct personal benefit of that Defendant." Similarly, in another of the questions, the jury was required to find the defendant "used Dick's West End as a sham for the purpose of perpetrating and did perpetrate an actual fraud on Market/Ross primarily for the direct personal benefit of that Defendant." These are the considerations both the legislature and the supreme court have emphasized and required. *See, e.g., SSP Partners*, 52 Tex. Sup.Ct. J. at 99, 101. We overrule appellants' fourth issue.

■ In their fifth issue, appellants contend the trial judge erred by submitting the alter ego and single business enterprise questions to the jury and denying appellants' motions for directed verdict, judgment notwithstanding the verdict, and new trial, because there was no or insufficient evidence of actual fraud to support the jury's answers to the alter ego and single business enterprise questions. The jury found against Schiff, Dick's Texas, and Dick's Holding Company in response to four separate questions setting forth four different theories for piercing the corporate veil (sham to perpetrate a fraud, alter ego, evasion of existing legal obligation, and single business enterprise).[3] Appellants' specific argument is that there was no evidence of a material misrepresentation made by appellants and relied on by Market/Ross that resulted in harm to Market/Ross, and therefore no "actual fraud" for purposes of article 2.21. Market/Ross

---

**3.** Appellants' issue is addressed to "Market Ross' alter-ego and single business enterprise questions to the jury," and does not mention the sham to perpetrate a fraud and evasion of existing legal obligation questions. In their reply brief, however, appellants argue their complaint applies to these latter theories as well.

offered evidence Schiff used Dick's West End as the tenant under the lease because it had no assets in the event it was sued for breach of the lease. Schiff testified:

Q. Is it correct that your idea or your plan was to use Dick's Last Resort of the West End, this no-asset company as the tenant, so you could close it whenever you wanted without being liable for the remainder of the lease?

A. Yes.

Q. You'll agree with me, though, that whether or not this tenant you put on the lease has no assets, a single asset, it's still liable when it walks the lease, correct?

A. It is.

Q. So what you were really doing was you were using this company so that if and when you walked out and then they got sued, the plaintiff would be suing a company that didn't have anything, right?

A. That's correct.

He later testified,

Q. I thought you said it was set up as a no-asset company so you could walk the lease and Mr. Nabors wouldn't have anybody to sue.

A. That's exactly what it was set up for.

Market/Ross also offered evidence that before the Fourth Amendment was signed, appellants represented the tenant under the lease would also be the operator of the restaurant. Market/Ross's witnesses testified this representation was important because the restaurant's ongoing operations and sales are the source of income landlords rely on for payment of rent. This point was vigorously contested at trial, and the jury could have considered both parties' evidence on this point in determining whether an actual fraud was perpetrated under article 2.21.

Market/Ross also offered evidence Schiff transferred ownership of the restaurant and obligations under the lease among Dick's Texas, Dick's Dallas, and Dick's West End to avoid certain obligations under the lease. The original lease provided that if the tenant transferred its interest in the lease, the tenant would pay the landlord one percent of gross sales for a specified period. This provision was defined for the jury as the "1% provision." "Transfer" was defined in the 1% provision to include both sublease and assignment. While the original lease permitted the tenant to sublet or assign the premises to an affiliated corporation without obtaining the landlord's permission, the Fourth Amendment required the landlord's consent for any assignment. Market/Ross offered evidence that on the same day Schiff signed the Fourth Amendment assigning the interest of Dick's Dallas to Dick's West End, he also signed an internal document entitled "Sublease" pursuant to which Dick's West End transferred the lease to Dick's Texas. Schiff testified by the time the Fourth Amendment was signed, Dick's Dallas had become Dick's Texas, but he signed the Fourth Amendment on behalf of Dick's Dallas nonetheless and did not make any correction to the document to reflect the correct assigning lessee. Thus, although the Fourth Amendment assigned Dick's Dallas's (on that date, actually Dick's Texas's) interest in the lease to Dick's West End, on the same day, Dick's West End transferred that interest back to Dick's Texas. The transfer back to Dick's Texas was not disclosed to Market/Ross, and Market/Ross did not receive any payment under the 1% provision. Dick's West End remained the tenant under the Fourth Amendment, to serve appellants' admitted goal of allowing Dick's West End to leave the premises before the end of the lease term without any assets subject to a

judgment for the remainder of the contractual rent.

Market/Ross offered additional evidence that after the Fourth Amendment was signed, Schiff obtained a release of Market/Ross's landlord's lien on the furniture, fixtures, and equipment of Dick's West End to pledge those assets to obtain a loan. Nabors testified Schiff represented the loan sought was for working capital for Dick's West End to conduct its operations. As Dick's West End did not have operations or a bank account, none of the loan proceeds were actually directed to it. In return for the release, Market/Ross obtained a guaranty in the amount of $45,000 from Dick's Chicago for the purported value of the furniture, fixtures, and equipment owned by Dick's West End, but Dick's Chicago did not pay Market/Ross after Dick's West End vacated the leased premises. The jury was instructed that Dick's Chicago breached this guaranty, and found $45,000 would fairly and reasonably compensate Market/Ross for this breach. Appellants do not challenge this instruction or finding on appeal.

Market/Ross offered additional evidence appellants concealed Dick's West End's lack of assets and operations by providing, as required by the lease, monthly sales reports to the landlord. None of these reports revealed the sales were actually made by an undisclosed sublessee, not the tenant under the lease. In addition, none of the rental checks sent to Market/Ross revealed that Dick's Texas was the party actually paying the rent. Schiff also testified he amended the sublease to provide Dick's Texas could terminate the sublease on thirty days' notice when he realized a mistake in his plan: if Dick's Texas owed Dick's West End for the complete lease term, then the sublease would be an asset Market/Ross could recover from Dick's West End and potentially collect from Dick's Texas in the event of a breach, because Dick's Texas did have assets and operations.

Market/Ross offered evidence Schiff notified Nabors in August 2005, with four years remaining on the lease, that the tenant was leaving the premises, and that Dick's West End had no assets, employees, operations, or funds to pay the rent. No rent payments were made on the lease after that date. Appellants moved the restaurant three blocks away, where it continued to operate at the time of trial with the same employees, equipment, and operating company, but at one-half the rent cost.

In light of this evidence, the jury reasonably could have concluded Schiff, Dick's Texas, and Dick's Holding Company caused Dick's West End to be used for the purpose of perpetrating, and did perpetrate an actual fraud on Market/Ross primarily for direct personal benefit. *See* TEX. BUS. CORP. ACT ANN. art. 2.21. Appellants planned to use the corporations to ensure the landlord could not recover any assets in the event the tenant decided to vacate before the end of the lease term, and concealed the plan from Market/Ross while committing to a ten-year lease term. They evaded the contractual obligations to pay rent for the full term of the lease and to make payment under the guaranty and the 1% provision. Considering the evidence in the light most favorable to the verdict, *see City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005) (in legal sufficiency review, we consider evidence in light most favorable to verdict and indulge every reasonable inference to support it), "the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex.1994). Further, considering all the evidence, the evidence supporting the jury's findings is not so weak or so against the overwhelming weight of

the evidence that the jury's findings are clearly wrong or unjust. *See Cain v. Bain*, 709 S.W.2d 175, 175 (Tex.1986). The evidence is legally and factually sufficient to support the jury's findings of alter ego, sham to perpetrate a fraud, and evasion of existing legal obligation. We overrule appellants' fifth issue.

■ In their first issue, appellants argue paragraph 13 of the Fourth Amendment "defeat[s], as a matter of law, Market/Ross's proof of 'actual fraud' as required by" article 2.21 of the Texas Business Corporation Act. Paragraph 13 provides:

> *Entire Agreement.* The Lease and this Amendment represent the entire agreement of Landlord and Tenant concerning the Leased Premises and there are no written or oral inducements, promises, agreements, or conditions made or offered in connection therewith that are not specifically stated in writing in the Lease or this Amendment.

Citing *Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171 (Tex.1997), and related cases, appellants urge this written contractual disclaimer "will defeat fraudulent inducement claims based on representations and promises outside the contract, by negating the element of reliance as a matter of law." The question presented in *Schlumberger* and its progeny was whether a written contractual disclaimer precluded, as a matter of law, a claim that a party was fraudulently induced into entering the contract. *See Schlumberger*, 959 S.W.2d at 173 ("The question is whether this disclaimer precludes, as a matter of law, the Swansons from recovering damages against Schlumberger for fraudulently inducing them to settle."). The *Schlumberger* court held a fraudulent inducement claim was precluded by the contractual disclaimer, and the supreme court recently reaffirmed this principle. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 52–53

(Tex.2008) (unambiguous waiver-of-reliance provision precludes fraudulent inducement claim as matter of law).

Appellants contend the *Schlumberger* holding controls here. Market/Ross, however, did not assert any claim it was fraudulently induced into executing the Fourth Amendment, or seek to set aside the Fourth Amendment on the basis of fraud. As noted above, Market/Ross sought to recover what it alleged it was owed under the contract and the guaranty. Reliance on extracontractual representations is not an element of Market/Ross's claim for breach of contract. In *Schlumberger* and *Forest Oil*, in contrast, the plaintiffs argued contractual provisions were induced by fraud and were therefore unenforceable. *See Schlumberger*, 959 S.W.2d at 178 (citing cases discussing whether contract can be set aside if induced by fraudulent representation or promise); *Forest Oil*, 268 S.W.3d at 54–55 (McAllen argued arbitration provision in settlement agreement was induced by fraud and thus unenforceable). The supreme court held the parties' contracts should be enforced as written, the result Market/Ross seeks here as to appellants Dick's West End and Dick's Chicago.

As to the remaining appellants (Dick's Texas, Dick's Holding Company, and Schiff), Market/Ross seeks to recover breach of contract damages by piercing the corporate veil. As discussed above, under article 2.21(A)(2), Market/Ross must prove "actual fraud" before it may recover from these parties. The question presented as to these appellants is whether the contractual disclaimer as a matter of law precludes Market/Ross's proof of actual fraud for purposes of piercing the corporate veil. Neither *Schlumberger* nor *Forest Oil* addresses this issue, and we believe their holdings are not applicable where Market/Ross is not attempting to set aside

the contract on the basis of fraud. We overrule appellants' first issue.

### Submission of Affirmative Defenses

In their second issue, appellants complain the trial judge erroneously refused to submit their affirmative defenses of waiver, estoppel, release, and laches to the jury. A trial judge is required to submit questions "which are raised by the written pleadings and the evidence." Tex.R. Civ. P. 278. Failure to submit a question is not a ground for reversal "unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment...." Tex.R. Civ. P. 278.

Appellants pleaded each of these defenses in their answer. They alleged Market/Ross "has waived its claims, if any, by intentionally accepting Dick's Last Resort of the West End, Inc. as its lessee without requiring any evidence of creditworthiness and knowing that it had limited ability to respond in damages." Appellants also pleaded "Market/Ross is estopped to assert its claims by virtue of its misrepresentation of material facts and intentions to Defendants;" "All Defendants have been released from all obligations under the lease;" and "All of Market/Ross' claims, if any, are barred by laches." Appellees point out the only waiver pleaded in appellants' answer was that Market/Ross waived its rights by failing to require evidence of creditworthiness. Appellees argue where a party makes specific allegations in a pleading, the specific allegations control over a general allegation, and the party "is confined in his recovery to those [allegations] specifically and particularly pleaded." *Richardson v. First Nat'l Life Ins. Co.*, 419 S.W.2d 836, 839 (Tex.1967); *Monsanto v. Milam*, 494 S.W.2d 534, 536 (Tex.1973). Even assuming appellants' pleading was sufficient, however, we conclude the trial judge did not err in refusing to submit the affirmative defenses, for the reasons below.

■ We next consider appellants' requested issues on the four affirmative defenses. For their defense of waiver, appellants requested the following issue: "Do you find that Plaintiff Market/Ross Ltd. has waived any of its claims against the Defendants?" This proposed issue also requested separate answers for the "single business enterprise claim" and the "alter ego claim." Accompanying this issue was a requested jury instruction that defined "waiver" as the intentional relinquishment of a known legal right. Similar questions were proffered for estoppel and laches, except that there was no distinction between, or separate answer line for, the single business enterprise claim and the alter ego claim. Appellants requested instructions defining estoppel and laches with their proposed questions. Appellants also requested an issue on release, but in the accompanying requested instruction, gave no definition or explanation of what the jury would be required to find in order to answer the question.

Regarding their affirmative defense of waiver, appellants argue the jury "was likely to have found that Market/Ross intentionally relinquished any right it may have had to attack the Appellants' corporate veils (other than Dick's West End)" in light of the evidence presented at trial. Appellants also argue appellees "intentionally relinquished any claim for fraudulent inducement." Regarding the latter argument, that appellees waived a fraudulent inducement claim, no such claim was pleaded or presented to the jury. The case was submitted on instructions for the jury to find damages based upon a breach of the lease by Dick's West End and a breach of a guaranty by Dick's Chicago, and upon various theories of setting aside the corporate formalities among appellants.

■ Regarding the former argument, that appellees waived their right to attack appellants' corporate veils, appellants cite to several provisions in the Fourth Amendment as well as circumstantial evidence. Paragraph 7 provides in part that "Landlord shall look solely to New Tenant for the performance of the Tenant's obligations hereunder." Paragraph 13 provides in part, "there are no written or oral inducements, promises, agreements, or conditions made or offered in connection therewith that are not specifically stated in writing...." Paragraph 9 provides in part, "to the extent any ... offsets, counterclaims, defenses or other causes of action may exist, whether known or unknown, such items are hereby knowingly and for consideration waived by Original Tenant and Landlord." Because neither party asserts these provisions are ambiguous, we may interpret them as a matter of law. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983) (if written instrument so worded that it can be given certain or definite legal meaning or interpretation, then it is not ambiguous and court will construe contract as matter of law). Paragraphs 7, 9, and 13 of the Fourth Amendment do not provide evidence from which a jury could conclude Market/Ross waived its right to attack appellants' corporate veils.

In paragraph 9, Market/Ross and "Original Tenant," Dick's Dallas, agreed there were no existing claims between them arising out of the lease or the Fourth Amendment, and to the extent any claims "may exist," they are "knowingly and for consideration waived." This paragraph does not address future claims, and does not preclude a claim by Market/Ross for breach of contract occurring in 2005 as asserted in this lawsuit.

In paragraph 13, Market/Ross agreed there were no verbal or written agreements or promises other than those stated in the original lease or the Fourth Amendment. Appellants argue this provision precludes Market/Ross from alleging any third party is responsible for the obligations of Dick's West End. Any waiver by this provision, however, would be implied, not express, and appellants did not request a jury issue regarding implied waiver, as discussed below. *See also Pleasant v. Bradford*, 260 S.W.3d 546, 556–57 (Tex. App.-Austin 2008, pet. denied) (trial judge not required to submit jury issue on waiver where party to contract disclaimed reliance on any promises not made in contract).

Paragraph 7, entitled "Assignment of Lease," provides that Market/Ross consents to the assignment of the lease from Dick's Dallas to Dick's West End. Dick's Dallas assigns and transfers all rights as tenant to Dick's West End; Dick's West End assumes all obligations under the lease; and Market/Ross "shall look solely to New Tenant [Dick's West End] for the performance of the Tenant's obligations hereunder." This paragraph provides Market/Ross will not look to Dick's Dallas for performance of the lease. Consistent with this provision, Market/Ross neither asserted a breach of contract claim against Dick's Dallas, nor sought recovery from Dick's Dallas through allegations of alter ego or single business enterprise. Appellants' requested jury issue on waiver addresses only alter ego and single business enterprise, does not specify any defendant, and defines only express waiver, an "intentional relinquishment of a known legal right." *See Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex.1987) (defining waiver as intentional relinquishment of known right or intentional conduct inconsistent with claiming that right). Paragraph 7 addresses only rights among Dick's Dallas, Dick's West End, and Market/Ross, and Market/Ross makes no claim inconsistent with the express provisions of paragraph 7.

Appellants argue evidence other than the terms of paragraphs 7, 9, and 13 of the Fourth Amendment supported submission of a jury issue on waiver. The other evidence cited by appellants, however, are facts that in appellants' words "strongly suggest" certain conclusions. For example, appellants argue Market/Ross's failure to request financial statements from Dick's West End "strongly suggests" the financial wherewithal of the new tenant was immaterial to Market/Ross. These facts and suggested conclusions are not evidence of intentional relinquishment of a known right by Market/Ross. While implied waiver may occur by intentional conduct inconsistent with a known right, *see Sun Exploration*, 728 S.W.2d at 37, appellants did not request a jury instruction to this effect. We conclude the trial judge did not err in refusing appellants' requested jury issue and instruction on waiver.

■■ Similarly, we conclude the trial judge did not err by refusing appellants' requested jury issue and instruction on estoppel. Appellants requested the jury be instructed as follows: "You are instructed that 'estoppel' or 'estopped' means that a party is precluded from changing its position when the party misrepresented facts to, or concealed facts from, the other party knowing the other party would rely on the representation to its detriment." The requested issue and instruction are not in substantially correct form, as they do not correctly set forth the elements of either promissory estoppel[4] or equitable estoppel.[5] We also conclude the

trial judge did not err by refusing appellants' requested jury issue on release. Neither the issue nor the instruction defined or explained what the jury would be required to find; the proposed instruction listed only certain facts the jury could consider. *See* Tex.R. Civ. P. 278 (failure to submit question or instruction not ground for reversal unless substantially correct question or instruction requested in writing).

■ Finally, we conclude the trial judge did not err by refusing appellants' requested jury issue and instruction on laches. Appellants argue Market/Ross unreasonably delayed in asserting its rights under the lease in two ways. First, Market/Ross concealed its reliance on appellants' alleged promise that the lessee would be the operator of the restaurant. Second, Market/Ross did nothing to stop appellants from spending "hundreds of thousands of dollars finishing out a new location" after learning that Dick's West End planned to abandon the lease. Two essential elements of laches are (1) unreasonable delay by one having legal or equitable rights in asserting them, and (2) a good faith change of position by another to his detriment because of the delay. *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex.1989). However, Market/Ross asserted its claims for breach of the lease by filing suit on September 26, 2005, within two months of receiving written notice that Dick's Texas was vacating the leased premises, and within two months of the first alleged failure to pay rent. There was no fact issue

---

**4.** The requisites of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983).

**5.** Equitable estoppel is established when (1) a false representation or concealment of material facts, (2) is made with knowledge, actual or

constructive, of those facts, (3) with the intention that it should be acted upon, (4) to a party without knowledge or means of obtaining knowledge of the facts, (5) who detrimentally relies on the representations. *Fiengo v. Gen. Motors Corp.*, 225 S.W.3d 858, 861 (Tex. App.-Dallas 2007, no pet.), (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex.1998)).

to be determined by the jury regarding unreasonable delay by Market/Ross in asserting its rights under the lease. We overrule appellants' second issue.

### Appellants' Counterclaim

In their third issue, appellants complain the trial judge erred by granting Market/Ross's motion for directed verdict on appellants' claims they were defrauded by Market/Ross's misrepresentations in paragraphs 7 and 13 of the Fourth Amendment. As explained by appellants, "the thrust of the counterclaim is that Market/Ross represented in the Fourth Amendment that there were no oral promises which induced the Fourth Amendment when, in fact, it now claims that there were such oral promises." Appellants alleged they were fraudulently induced into executing the Fourth Amendment, and as a result, they "forewent opportunities to pursue better locations for their Dallas restaurant operations than the premises leased from Market/Ross, and thereby suffered damages." A directed verdict is proper if the evidence offered on a cause of action is insufficient to raise an issue of fact. *See Prudential Ins. Co. v. Fin. Review Servs.*, 29 S.W.3d 74, 77 (Tex.2000) (court may instruct verdict if no evidence of probative force raises fact issue on material questions in suit). When reviewing a directed verdict, we credit all favorable evidence that reasonable jurors could believe, and disregard all contrary evidence except that which reasonable jurors could not ignore. *City of Keller*, 168 S.W.3d at 823–26.

While Market/Ross and Nabors moved for directed verdict on appellants' fraud counterclaim on several grounds, the parties' briefing primarily addresses whether there was some evidence appellants suffered damage from the alleged fraud. Appellants urge they suffered damage in the amount of $600,000. Schiff testified he would have moved the restaurant to Addison in 1999 rather than signing the Fourth Amendment had he known of Market/Ross's misrepresentations in the contract. He further testified it would have cost between $150,000 to $200,000 to move the restaurant to Addison in 1999, and that it cost "about $800,000" to move to the restaurant's current location. Appellants contend this evidence raises a fact issue on their fraud counterclaim.

As explained in *Formosa Plastics Corp. v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex.1998), Texas recognizes two measures of direct damages for common-law fraud, the out-of-pocket measure and the benefit-of-the-bargain measure. The out-of-pocket measure computes the difference between the value paid and the value received, while the benefit-of-the-bargain measure computes the difference between the value as represented and the value received. *Formosa Plastics Corp.*, 960 S.W.2d at 49. Under either measure, appellants offered no evidence of any value they received under the Fourth Amendment, or whether they in fact were damaged by staying in the leased premises rather than moving to Addison in 1999. Further, the evidence is not specific as to which appellants may have suffered the loss. Appellants' counterclaim was based on representations made in the Fourth Amendment, which would indicate Dick's West End, the party to the Fourth Amendment, would have been the party suffering the damage. However, the evidence showed Dick's West End had no assets other than the lease, so it is unclear what damage Dick's West End might have suffered from the alleged fraud.

Schiff testified about the amount spent to move to a different location after ceasing to pay rent under the Fourth Amendment, and a lesser amount appellants might have spent to move in 1999. Crediting this favorable evidence, *see City of*

*Keller,* 168 S.W.3d at 823–26, it is insufficient to raise a fact issue for the jury's consideration regarding the damages suffered as a result of the alleged fraud. The trial judge did not err in granting a directed verdict on appellants' counterclaim. *See Prudential Ins. Co.,* 29 S.W.3d at 77. We overrule appellants' third issue.

### Conflict in Jury Answers

■■■ In their sixth issue, appellants contend there is an irreconcilable conflict between the jury's answer to Question 4 and its answers to Questions 7 through 10. Appellants argue Question 4 "assumed that a sublease was an effective conveyance between two of the corporate appellants," while the jury's answers to Questions 7 through 10 "found that those same corporations were one and the same entity." Appellants conclude "the trial court's judgment is contradictory on a controlling fact issue concerning separateness."

■■■ Market/Ross first responds that appellants failed to preserve error by not objecting to the conflicting answers prior to the jury's discharge. We agree. *See Kitchen v. Frusher,* 181 S.W.3d 467, 473 (Tex.App.-Fort Worth 2005, no pet.) (complaint of conflicting jury findings not preserved for review where appellants did not raise contention before jury discharged). In addition, a court may not strike down jury answers on the ground of conflict if there is any reasonable basis upon which they can be reconciled. *Bender v. S. Pac. Transp. Co.,* 600 S.W.2d 257, 260 (Tex.1980). The threshold question is "whether the findings are about the same material fact." *Bender,* 600 S.W.2d at 260. We determine "whether there is any reasonably possible basis upon which [the findings] may be reconciled," not "whether the findings may reasonably be viewed as conflicting." *Bender,* 600 S.W.2d at 260.

Here, the jury's finding in response to Question 4 that Dick's West End breached the 1% provision of the lease may be reconciled with the jury's answers to Questions 7 through 10. For Question 4, the term "1% provision" was defined in the instructions given to the jury. Under the 1% provision, if the tenant transferred its interest in the lease, it agreed to pay 1% of total gross sales to the landlord. The provision defined transfer to include sublease, sale, or assignment of a majority ownership interest in the tenant. Questions 7 through 10 inquired whether Dick's Texas, Schiff, or Dick's Holding Company were responsible for Market/Ross's damages through theories of corporate veil-piercing. The jury's finding in Question 9 that Dick's Texas, Schiff, and Dick's Holding Company used Dick's West End as a means of evading an existing legal obligation for the purpose of perpetrating an actual fraud, for example, is consistent with Market/Ross's contention that appellants intended to circumvent the 1% provision, and is also consistent with the jury's finding that Dick's West End did not pay Market/Ross 1% of its gross sales when required to do so by the lease. Even if appellants properly preserved their complaint of a conflict between the jury's answers, there is a reasonable basis on which the jury's findings may be reconciled. *See Bender,* 600 S.W.2d at 260. We overrule appellants' sixth issue.

### Segregation of Attorney's Fees

■■■ In their seventh issue, appellants complain the trial judge erred by failing to require Market/Ross to allocate its evidence of attorney's fees between its contract claims and its veil-piercing theories. Appellants also contend there was no segregation of the evidence as to each individual appellant. Appellants cite to their counsel's objection at trial to the attorney's fees question in the jury charge:

Question 5 on attorney's fees is defective because it does not segregate the attor-

ney's fees according to the claims. It fails to allocate fees between breach of lease, breach of guaranty and breach of the 1 percent provision claims. These are separate contractual obligations. It should not be submitted to the jury because there's no evidence pertinent to any of these claims and there's no evidence in the record as to which attorney's fees are applicable to which claim.

This objection brings to the trial court's attention a complaint about failure to segregate fees among the breach of contract claims, not a complaint about failure to segregate fees between the contract claims and the veil-piercing theories. Appellants have waived this objection. *See* TEX.R. CIV. P. 274 (party objecting to charge must point out distinctly the objectionable matter and grounds of objection; complaint waived unless specifically included in objections); *see also Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex.1997) (absent objection, complaint that attorney's fees are not segregated as to specific claims is waived); *Holmes v. Concord Homes, Ltd.*, 115 S.W.3d 310, 313 (Tex.App.-Texarkana 2003, no pet.) (objection did not raise complaint about failure to segregate fees; complaint not preserved for appellate review). We overrule appellants' seventh issue.

We affirm the trial court's judgment.