Ronald J. LATHAM, Appellant,

v.

David BURGHER, Appellee.

No. 05–08–01477–CV.

Court of Appeals of Texas, Dallas.

Aug. 27, 2010.

John J. Marek, Addison, TX, for Appellant.

G. Michael Stewart, Godwin Pappas Langley Ronquillo, LLP, Dallas, TX, for Appellee.

Before Justices MOSELEY, BRIDGES, and FITZGERALD.

## OPINION

Opinion By Justice FITZGERALD.

David Burgher sued Ronald J. Latham ("Latham") and Latham Roofing, Inc.—Commercial ("Roofing Inc.") alleging breach of contract and violations of the Texas Deceptive Trade Practices Act. The jury found that Roofing Inc. failed to comply with its agreement to repair Burger's roof and that Roofing Inc. violated the DTPA in its dealings with Burgher. The jury further found that Latham was responsible for the conduct of Roofing Inc. On appeal, Latham challenges the legal and factual sufficiency of the evidence supporting the jury's findings on alter ego, damages, and attorney's fees. Latham also contends the trial court submitted an improper definition of "actual fraud" in the alter ego question, resulting in an improper verdict. For the reasons discussed below, we reverse the trial court's award of actual damages and the award of interest based thereon; we affirm the remainder of the trial court's judgment.

### BACKGROUND

Burgher contracted with Roofing Inc. in 2003 to repair the tile roof on his residence. The contract price for this initial work was $4500.00. Three years later, Burgher noticed leakage and called Roofing Inc. Workers for Roofing Inc. came to Burgher's home and did further repair work costing $695.00. Thus, Burgher paid Roofing Inc. a total of $5195.00. Several months later, when more leaking was discovered, Burgher hired another company,

Staz On Roofing, to repair the roof at a cost of $3,429.00.

Burgher's lawyer sent Roofing Inc. a demand letter threatening suit in September 2006. In November of that year, Latham dissolved Roofing Inc. Burgher sued both Roofing Inc. and Latham individually for breach of contract and DTPA violations. The jury found Roofing Inc. had breached its contract and violated the DTPA, and it found Latham should be responsible for those acts. The trial court signed a judgment making the two defendants jointly and severally liable for the damages found by the jury.

Latham has appealed the judgment against him personally. The findings of breach of contract and violations of the DTPA by Latham's company remain unchallenged.

### DEFINITION OF "ACTUAL FRAUD"

 In his second issue, Latham contends the trial court submitted an improper definition of "actual fraud" in the alter ego jury question.[1] The court's definition read:

As used in this Question Eleven, the term "actual fraud" means "involving dishonest or purpose or intent to deceive."

At the charge conference, Latham's counsel objected to this definition, tendered what he called an amended jury instruction, and stated he believed the amended instruction should be included with the trial court's instruction. The tendered instruction read:

Fraud occurs when—

a. a party f[a]ils to disclose a material fact within the knowledge of the party,

b. the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth,

c. the party intends to induce the other party to take some action by failing to disclose the fact, and

d. the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

Latham's tendered instruction is drawn from Pattern Jury Charge 105.4, which is titled "Instruction on Common–Law Fraud—Failure to Disclose When There Is Duty to Disclose." Its accompanying commentary states that it is to be used if the court finds there is a duty to disclose. The trial court denied Latham's request to include the instruction.

 In all jury cases, the trial court must submit instructions and definitions to enable the jury to render a verdict properly. TEX.R. CIV. P. 277. A valid instruction must: (1) assist the jury, (2) accurately state the law, and (3) find support in the pleadings and evidence. *Union Pac. R.R. v. Williams*, 85 S.W.3d 162, 166 (Tex.2002). The trial court has considerable discretion in deciding what instructions are necessary

---

1. Latham also contends the evidence is insufficient to support the jury's implied finding of actual fraud, a threshold finding necessary for the ultimate finding of alter ego. Ordinarily we would address the legal sufficiency challenge first because it could lead to rendition of the cause. However, before we can measure the sufficiency of the evidence, we must identify the standard against which the evidence is to be measured. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex.2002). If there has been no objection to the jury charge, then the charge actually submitted is the proper measure of the sufficiency of the evidence. *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex.2000). But when, as in this case, an objection to the charge is properly preserved, we determine whether the charge submitted was erroneous and then measure the sufficiency of the evidence against the correct standard. *See St. Joseph Hosp.*, 94 S.W.3d at 530.

and proper in submitting issues to the jury. *State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 451 (Tex.1997). Therefore, we will not disturb the trial court's decision on which instructions to submit to the jury absent an abuse of discretion. *McCarthy v. Wani Venture, A.S.,* 251 S.W.3d 573, 584 (Tex.App.-Houston [1st Dist.] 2007, pet. den.).

■ Latham objected to the actual fraud definition given by the trial court and tendered an instruction rooted in the tort of fraud. This instruction—based on fraudulent failure to disclose information the defendant purportedly had a legal duty to disclose—bore no connection to Burgher's substantive claims of breach of contract and DTPA violations. Moreover, in the context of piercing the corporate veil, actual fraud is not equivalent to the tort of fraud. Instead, in that context, actual fraud involves "dishonesty of purpose or intent to deceive." *Castleberry v. Branscum,* 721 S.W.2d 270, 273 (Tex.1986); *Priddy v. Rawson,* 282 S.W.3d 588 (Tex. App.-Houston [14th Dist.] 2009, pet. den.); *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.,* 237 S.W.3d 379, 387 (Tex.App.-Houston [14th Dist.] 2007, no pet.). Indeed, this Court has recently approved an actual-fraud instruction essentially identical to the one given in Latham's case. In *Dick's Last Resort of West End, Inc. v. Market/Ross, Ltd.,* 273 S.W.3d 905, 908 (Tex.App.-Dallas, 2008 pet. denied), we rejected the argument that an actual fraud instruction should include elements of the tort of common law fraud. We concluded the trial court properly instructed the jury that actual fraud means conduct involving either dishonesty of purpose or intent to deceive. *Id.* at 909–10. The instruction given in *Dick's Last Resort* is included in the comments to the pattern jury charges for piercing the corporate veil. *See id.* at 909 (citing State

Bar of Tex., Texas Pattern Jury Charges, Business, Consumer, Insurance, Employment PJC 108.2 cmt. at 191 (2006 ed.)). Accordingly, we discern no abuse of discretion in the trial court's use of that definition in this case as well.

Latham also complains of the wording of the definition as it was given in the charge. The definition does include a typographical error. The definition that originated in *Castleberry* and is found in the comments to the Pattern Jury Charge reads: "Actual fraud" means actions involving *dishonesty of purpose* or intent to deceive. *See* PJC 108.2 cmt. at 199 (2008 ed.) (emphasis added). The definition submitted in Latham's case reads: "Actual fraud" means "involving *dishonest or purpose* or intent to deceive." (Emphasis added.) However, Latham did not object on this ground, and he points to nothing in the record that indicates the jurors were confused by the wording in the charge. Latham has preserved nothing for our review on this complaint.

We overrule Latham's second issue.

### SUFFICIENCY OF THE EVIDENCE

■ Latham raises three challenges to the sufficiency of the evidence supporting the trial court's judgment entered on the jury's findings. In a legal sufficiency review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). We ask whether the evidence—crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not—would permit reasonable and fair-minded people to reach the verdict under review. *Id.* at 827. In our factual sufficiency review, we consider all the evidence; we will set aside the finding only if the evidence supporting the

finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001).

## Alter Ego

In his first issue, Latham challenges the legal and factual sufficiency of the evidence supporting the jury's finding of alter ego. Traditionally, we apply the alter ego doctrine to pierce the corporate veil when there is "a unity between the corporation and the individual to the extent that the corporation's separateness has ceased, and holding only the corporation liable would be unjust." *Castleberry*, 721 S.W.2d at 272; *Sparks v. Booth*, 232 S.W.3d 853, 868 (Tex.App.-Dallas 2007, no pet.). But the issue of alter ego has been codified to a substantial degree. The current statute states in relevant part:

(a) A holder of shares . . . may not be held liable to the corporation or its obligees with respect to:

\* \* \*

(2) any contractual obligation of the corporation or any matter arising from the obligation on the basis that the holder . . . is or was the alter ego of the corporation . . . or other similar theory . . .

\* \* \*

(b) Subsection (a)(2) does not prevent or limit the liability of a holder . . . if the obligee demonstrates that the holder . . . caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder . . .

TEX. BUS. ORGS. CODE ANN. § 21.223 (Vernon Supp.2009) (version first effective Jan. 1, 2006; previously enacted at TEX. BUS. CORP. ACT art. 2.21, § A (Vernon 2003)). This statutory standard is included in the pattern jury charge alter ego instruction, which was submitted to the jury in this case. *See* PJC 108.2 at 198.[2]

Latham argues specifically that the evidence was legally and factually insufficient to support findings: that Roofing Inc. was

2. Question No. 11 submitted the pattern jury charge's basic question for piercing the corporate veil: Is Ronald Latham responsible for the conduct of Latham Roofing—Commercial? The question is to be followed by one or more instructions that explain under what circumstances the corporate veil may be pierced. The alter ego instruction submitted by the court read:

> Ronald Latham is "responsible" for the conduct of Latham Roofing Inc.—Commercial if:
>> Latham Roofing Inc.—Commercial was organized and operated as a mere tool or business conduit of Ronald Latham; there was such unity between Latham Roofing Inc.—Commercial and Ronald Latham that the separateness of Latham Roofing Inc.—Commercial had ceased and holding only Latham Roofing Inc.—Commercial responsible would result in injustice; and Ronald Latham caused Latham Roofing Inc.—Commercial to be

used for the purpose of perpetuating and did perpetuate an actual fraud on Plaintiff primarily for the direct personal benefit of Ronald Latham.
>
> In deciding whether there was such unity between Latham Roofing Inc.—Commercial and Ronald Latham that the separateness of Latham Roofing Inc.—Commercial had ceased, you are to consider the total dealings of Latham Roofing Inc.—Commercial and Ronald Latham, including:
>
> 1. the degree to which Latham Roofing Inc.—Commercial's property had been kept separate from that of Ronald Latham;
>
> 2. the amount of financial interest, ownership, and control Ronald Latham maintained over Latham Roofing Inc.—Commercial; and
>
> 3. whether Latham Roofing Inc.—Commercial had been used for personal purposes of Ronald Latham.

organized and operated as a mere tool or business conduit for Latham; that there was such unity between Roofing Inc. and Latham that their separateness had ceased, and holding only Roofing Inc. responsible would result in injustice; and that Latham used Roofing Inc. for the purpose of perpetrating and did perpetrate an actual fraud on Burgher for the direct personal benefit of Latham. We disagree. For example, the following evidence could have led a reasonable and fair-minded person to conclude Latham was Roofing Inc.'s alter ego.

- According to financial records of the corporation, Latham was the president of Roofing Inc. and his wife was its secretary. Latham and his wife were Roofing Inc.'s sole shareholders.[3] This would not be sufficient on its own to prove alter ego, but it is evidence of the degree of control Latham exercised over Roofing Inc.

- The record includes corporate tax returns for Roofing Inc. for the years 2003 through 2006. In each of those years, the entire amount of the corporation's ordinary business income was distributed in equal amounts to Latham and his wife. In other words, all profits of Roofing Inc. flowed to Latham.

- Financial documents in the record also establish that in June 2006, Latham accepted a personal loan in the amount of $51,000 from Roofing Inc. Latham testified he paid the loan back with interest; the financial documents do not establish that fact. The jury was best situated to assess the significance of this evidence and Latham's credibility on this point.

- In 2006—shortly after Latham received a demand letter from Burgher's attorney concerning his intent to file this lawsuit—Latham dissolved Roofing Inc. The dissolution documents represented that all debts, liabilities, and obligations of Roofing Inc. had been satisfied or provided for and that all remaining property and assets of Roofing Inc. had been distributed to its shareholders, i.e., to Latham and his wife. No funds were set aside for the possible liability of Roofing Inc. to Burgher. Latham testified he closed the corporation down on the advice of his bank's president because forged checks were being written on the corporate account. The bank president did not testify. But there was testimony at trial that the forged checks were passed (and paid by the bank) in May, some six months earlier. An assistant vice president of the bank testified that in May she had recommended Latham close the *account*, not his business, to stop the problem checks. The jury was best situated to assess the significance of this evidence and Latham's credibility on this issue as well.

Latham stresses that he never dealt with Burgher personally and that the breach and DTPA findings by the jury were against the corporation, not him personally. It is true that the corporate form will normally insulate shareholders, officers, and directors from liability for corporate obligations. *Castleberry*, 721 S.W.2d at 271. "[B]ut when these individuals abuse the corporate privilege, courts will disregard the corporate fiction and hold them individually liable." *Id.* Latham relies on the undisputed facts that Roofing Inc.—at least for some

---

**3.** Although Latham's wife is identified as an officer and a shareholder in financial documents, Latham stated in a February 2006 letter to the Texas Secretary of State: "I am the sole owner, sole officer and sole director of Latham Roofing Inc.—Commercial."

time—had a separate bank account from Latham personally and that it filed corporate income tax returns. But viewing all the evidence neutrally, those facts cannot outweigh the evidence indicating that Roofing Inc. was operated as a mere business conduit for Latham. The ultimate expression of Latham's use of Roofing Inc. was his dissolution of the corporation after Burgher's attorneys threatened suit. Latham's arguments suggest Burgher should look to Roofing Inc. to be made whole, but Latham himself destroyed that option when he dissolved Roofing Inc. And having dissolved the corporation, he took its assets and property for himself. A rational juror could have decided that holding only the non-existent Roofing Inc. responsible would result in injustice. A rational juror could also have decided Latham's conduct in dissolving the corporation in the face of Burgher's claim represented dishonesty of purpose or an intent to deceive, i.e., actual fraud. *See Castleberry*, 721 S.W.2d at 273; *Dick's Last Resort.*, 273 S.W.3d at 909–10.

■ The corporate structure's limitation on liability can be ignored only "when the corporate form has been used as part of a basically unfair device to achieve an inequitable result." *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 451 (Tex.2008) (quoting *Castleberry*, 721 S.W.2d at 271). A rational jury could have concluded this was just such a case. Whether we consider the evidence in the light most favorable to the verdict or all the evidence in a neutral light, ample evidence supports the jury's alter ego finding. *See City of Keller*, 168 S.W.3d at 822; *Dow Chem. Co.*, 46 S.W.3d at 242. We overrule Latham's first issue.

### Damages

In his third issue, Latham contends the evidence was legally and factually insufficient to support the jury's findings on actual and treble damages. Latham attacks the damages findings on a number of bases.

### *Actual Damages*

■ Latham first contends Burgher cannot recover the full amount paid to Roofing Inc. because Burgher himself did not write the check for the original payment to the company; his fiancée did. We reject this argument. The obligation to pay Roofing Inc. was Burgher's, and the injury suffered was to Burgher's residence. The fact someone else paid all or some of what was due for him does not mean he was not injured by the faulty work. *See TCA Bldg. Co. v. Entech, Inc.*, 86 S.W.3d 667, 672 (Tex.App.-Austin 2002, no pet.) (not necessary that offeree itself furnish consideration: can be paid by another person).

■ Latham makes two specific sufficiency arguments concerning damages, one to the evidence supporting out-of-pocket damages and one to the expenses or cost-of-repairs damages. Both challenges are resolved by the testimony of Rob Ramsdale, an estimator and sales person for Staz On Roofing. Latham first contends Burgher's claim for out-of-pocket damages fails because he failed to prove—and subtract out—the value of the repairs initially performed by Roofing Inc. in 2003. Latham contends those repairs must have had some value because Burgher was content with the work for three years. However, Ramsdale testified that the work initially contracted for was not performed by Latham. Ramsdale also described a series of temporary fixes he saw on the roof: peel-and-stick covering placed over broken tiles and tears in the old underlayment; caulking around other broken tiles; foam blown into the chimney area. According to Ramsdale, none of these "repairs"

would have kept water out. Thus, none would have prevented water from rotting the wood below the roofing material and eventually entering the house. It is true the Burghers were not aware of the extent of the problem until Ramsdale examined the roof. However, the jury could have rationally believed that during the time between 2003 and 2006, the roof was quietly but steadily getting worse and worse. If jurors accepted Ramsdale's testimony, they could rationally have believed that Roofing Inc.'s "repairs" had no value to the Burghers from the outset. In that case, out-of-pocket damages would have included all payments made by the Burghers to Roofing Inc.

■ Latham also contends there was insufficient evidence supporting the jury's cost-of-repair finding, because Staz On Roofing did not segregate repairs it made that were unrelated to the prior work by Roofing Inc. The record supports an inference that all repairs made by Staz On Roofing were either (1) repairs Roofing Inc. should have made pursuant to its contract with Burgher, or (2) repairs necessitated by Roofing Inc.'s failure to repair the roof properly in the first instance. Both of these amounts were properly included in the jury's cost-of-repair calculation.

■ Latham next contends that Burgher was given a double recovery because the trial court's judgment included both his out-of-pocket damages ($5195) and his cost-of-repair or benefit-of-the-bargain damages ($3429). In a deceptive trade practices case, a plaintiff may recover under either the benefit-of-the-bargain measure or the out-of-pocket measure, whichever gives the greater recovery; the plaintiff may not recover both. *Ebby Halliday Real Estate, Inc. v. Murnan,* 916 S.W.2d 585, 590 (Tex.App.-Fort Worth,1996, writ den.). Burgher attempts to distinguish *Murnan,* in which the plain-

tiff obtained a jury verdict on DTPA claims only. Burgher argues that because he obtained favorable jury findings on both his contract and DTPA claims, he should recover under both theories. But Burgher suffered a single injury: damage to his residence caused by shoddy roofing work. Although he may plead and try more than one theory of liability, he may recover under only one. *See Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 303 (Tex. 2006). *See also* TEX. BUS. & COM.CODE ANN. § 17.43 ("The remedies provided in this subchapter are in addition to any other procedures or remedies provided for in any other law; provided, however, that no recovery shall be permitted under both this subchapter and another law of both damages and penalties for the same act or practice."). We conclude Latham's argument concerning a double recovery of actual damages is well-taken.

### Treble Damages

■ Latham raises three arguments under the category of treble damages. First, he contends there is no evidence to support the jury's treble damages award because there is no evidence of knowing conduct. The jury found knowing conduct by Roofing Inc., not by Latham. Accordingly, that finding goes to the liability of Roofing Inc., just as the breach of contract and DTPA findings do. Roofing Inc. has not appealed the finding; Latham has no standing to do so. *See Menetti v. Chavers,* 974 S.W.2d 168, 171–72 (Tex.App.-San Antonio,1998 no pet.).

Second, Latham argues Burgher is not entitled to treble damages because he has not proven entitlement to actual damages. We have concluded Burgher is entitled to actual damages, so we reject this argument.

Third, Latham argues Burgher failed to satisfy a condition precedent to recovery under the DTPA, namely making a proper written demand. At trial, however, Latham admitted he had received a September 5, 2006 letter from Burgher's attorneys informing Latham that they intended to assert claims on behalf of Burgher. And while Latham testified he did not remember all the contents of the letter,' he did not dispute that the letter included notice of claims for both breach of contract and DTPA violations. There was ample evidence of a written DTPA demand.

We sustain Latham's third issue to the extent it complains of a double recovery of actual damages. In all other respects, we overrule the issue.

### Attorney's Fees

In his fourth issue, Latham challenges the legal and factual sufficiency of the evidence to support the jury's award of attorney's fees to Roofing Inc. Latham argues initially that the award should be reversed because Burgher failed to make a proper demand for fees for both his contract claim and his DTPA claim. At the time of trial, Burgher's live pleading stated:

> Plaintiff has provided Defendants with written notice under Tex. Bus. & Com. Code § 17.50(5)(b) of Defendants' violation of the DTPA and of Plaintiff's intent to seek damages.

> All conditions precedent have been performed or have occurred as required by Tex.R. Civ. P. 54.

Latham's live pleading, on the other hand, contained verified denials stating:

> Plaintiffs have failed to perform all conditions precedent necessary to recover, including proof of contract and performance by Plaintiffs.

> Plaintiffs have failed to give proper notice of their claims pursuant to the Texas Deceptive Trade Practices–Consumer Protection Act.

The record does not identify—or indicate that Latham pursued—any specific defect in Burgher's demand for attorney's fees beyond these general recitals. On appeal, Latham argues specifically that Burgher failed to prove he had made demands in writing. But, as we discussed above, Latham admitted he had received the September 2006 demand letter that included notice of claims for both breach of contract and DTPA violations. Moreover, Latham acknowledged he was president of Roofing Inc. at the time he received the notice. Thus, notice to Latham was notice to Roofing Inc. *Equisource Realty Corp. v. Crown Life Ins. Co.*, 854 S.W.2d 691, 696 (Tex. App.-Dallas 1993, no writ) (notice to an agent is deemed notice to the principal) (citing *Williams v. Jennings*, 755 S.W.2d 874, 883 (Tex.App.-Houston [14th Dist.] 1988, writ denied)).

Latham also complains that Burgher failed to segregate activities for which fees are recoverable from those for which fees are not recoverable. Latham did not object to a lack of segregation and so has not preserved error on this issue. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997).[4]

We overrule Latham's fourth issue.

### CONCLUSION

The trial court's award of actual damages in this case contains a double recov-

---

4. To avoid confusion, we note that Burgher's contract claim and his DTPA claim would both allow recovery of attorney's fees. Thus, as to the claims that were submitted to the jury, a requirement of segregation never arose in this case. *See Chapa*, 212 S.W.3d at 311.

ery. Accordingly, we reverse the portions of the trial court's judgment awarding (a) actual damages and (b) interest based on the actual damages award. We remand this cause for entry of a damages award that eliminates the double recovery in accordance with this opinion, and for recalculation of interest based on the revised award. In all other respects, we affirm the trial court's judgment.