IN THE
TENTH COURT OF APPEALS
No. 10-08-00161-CV


BRADFORD A. PHILLIPS, CLIFTON
PHILLIPS, RYAN T. PHILLIPS AND F.
TERRY SHUMATE,

                                        Appellants

 v.

UNITED HERITAGE CORPORATION, A
UTAH CORPORATION,

                                        Appellee

From the 249th District Court
Johnson County, Texas
Trial Court No. C200500312

## OPINION

It is a fundamental principle that the corporate structure normally insulates shareholders, officers, and directors from individual liability for the debts, liabilities, and obligations of the corporation. *See Willis v. Donnelly*, 199 S.W.3d 262, 271-72 (Tex. 2006). Nevertheless, their abuse of this privilege can result in the "piercing of the corporate veil" and the imposition of individual liability. *See Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986). Theories exist that provide a basis for piercing the

corporate veil. However, these theories and the attempts to utilize them are not substantive causes of action. *See Mapco, Inc. v. Carter,* 817 S.W.2d 686, 688 (Tex. 1991); *Gallagher v. McClure Bintliff,* 740 S.W.2d 118, 119 (Tex. App.—Austin 1987, writ denied). Rather, they are a means of imposing on an individual a corporation's liability for an underlying cause of action. *See Dick's Last Resort of the West End, Inc. v. Market/Ross, Ltd.,* 273 S.W.3d 905, 909 (Tex. App.—Dallas 2008, pet. denied) (*citing Cox v. S. Garrett, L.L.C.,* 245 S.W.3d 574, 582 (Tex. App.—Houston [1st Dist.] 2007, no pet.)).

In the matter before us, Bradford A. Phillips, Clifton Phillips, Ryan T. Phillips, and F. Terry Shumate appeal from the trial court's judgment based on jury findings that pierced the corporate veil of Black Sea Investments, Ltd. and held them each individually liable for a judgment United Heritage Corporation had taken against Black Sea in a prior suit. In seven issues, Appellants contend that: (1) the trial court erred in denying their motions to transfer venue; (2) the trial court erred in rejecting the defense of res judicata asserted by Bradford A. Phillips; (3) the trial court erred in denying their motions for judgment notwithstanding the verdict pursuant to the applicable laws of the Turks and Caicos Islands and article 8.02(A) of the Texas Business Corporation Act; (4) the trial court erred in denying their motions for judgment notwithstanding the verdict pursuant to article 2.21(A) of the Texas Business Corporation Act; (5) the evidence is legally insufficient to support the verdict of the jury and the trial court's judgment; (6) the evidence is factually insufficient to support the verdict of the jury and the trial court's judgment; and (7) the trial court submitted an erroneous jury charge. Because the trial court erred in determining that the Texas Business Corporation Act did

not apply to this action and UHC failed to establish that Appellants committed actual fraud, we reverse the judgment of the trial court and render judgment that Appellants are not individually liable to UHC for the prior judgment entered against Black Sea.

## I. *Factual and Procedural History*

Black Sea Investments, Ltd. was incorporated as an exempt company in the Turks and Caicos Islands on July 30, 1993. The laws under which it was formed required that Black Sea maintain its primary operations outside the territorial boundaries of those Islands. During its existence, Appellants at various and relevant periods of time served as either an officer or director of this corporation. However, Appellants were never shareholders in Black Sea. United Heritage Corporation (UHC) is a Utah Corporation and publicly traded entity in the NASDAQ capital market sector.

Because of its exempt and foreign corporation status, Black Sea was authorized to acquire and sell certain unregistered securities and avoid the prolonged investment registration requirements mandated by the Securities and Exchange Commission for similar domestic securities transactions. In 1997, Black Sea and UHC began negotiating the potential private offering of certain UHC securities. At the time, UHC's principal place of business was located in Cleburne, Johnson County, Texas. On or about December 17, 1997, Black Sea and UHC executed a Subscription Agreement for the purchase of $300,000.00 of UHC stock. Pursuant to the terms of this agreement, UHC sold 352,941 shares of its common stock to Black Sea. A majority of these shares were subsequently sold by Black Sea between July 16 and August 28, 1998. It was the alleged

untimely manner in which these shares were disposed of by Black Sea that precipitated the filing of UHC's first suit.

UHC originally filed suit against Black Sea and Bradford A. Phillips asserting claims for breach of contract, common law fraud, and statutory fraud. UHC also sought a declaratory judgment. After a bench trial, the trial court found that Black Sea's actions constituted a breach of the Subscription Agreement. The trial court thereafter rendered judgment against Black Sea solely on the breach of contract claim and awarded UHC $2,000,000.00 in damages, plus attorney's fees, costs, and interest. The trial court further concluded that Bradford A. Phillips was not personally liable to UHC under any theory alleged. An appeal ensued and this Court affirmed the trial court's judgment. *See United Heritage Corp. v. Black Sea Invs., Ltd.*, No. 10-03-00139-CV, 2005 WL 375443 (Tex. App.—Waco February 16, 2005, no pet.) (mem. op.).

UHC eventually proceeded to execute and collect the judgment it had secured against Black Sea in the first suit. These efforts were unsuccessful. As a result, UHC filed the present action to enforce this judgment against Black Sea. Additionally, UHC sought to pierce the corporate veil of Black Sea claiming that Appellants utilized Black Sea: (1) as their alter ego; (2) as a sham to perpetrate a fraud; (3) to evade an existing legal obligation; and (4) as a means to justify a wrong. *See Castleberry, supra*. In response, Appellants contended, *inter alia*, that the Texas Business Corporation Act (TBCA) governed the disposition of these claims. Specifically, Appellants contended that the claims UHC had asserted against them were subject to and barred by the laws of the Turks and Caicos Islands pursuant to article 8.02(A) of the TBCA or, alternatively,

by article 2.21(A) of the TBCA. The trial court rejected Appellants' contentions and charged the jury pursuant to the *Castleberry* principles. UHC prevailed on each charged theory. The jury's verdict effectively pierced the corporate veil of Black Sea and held Appellants individually liable for the judgment UHC had taken against Black Sea in the first suit. The trial court entered judgment on the jury's verdict and this appeal followed. Black Sea defaulted and did not appeal the judgment entered against it.

## II. *Standard of Review*

The denial of a motion for judgment notwithstanding the verdict is reviewed under a no-evidence standard. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009) (*citing City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). We credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Tanner*, 289 S.W.3d at 830 (*citing Central Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007)). We will uphold a judgment based on the jury's finding if more than a scintilla of competent evidence supports it. *Id.* (*citing Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003) (per curiam)). Therefore, we must decide whether the evidence presented at trial could allow reasonable and fair-minded people to reach the verdict under review. *Id.* (*citing City of Keller*, 168 S.W.3d at 827).

## III. *Statutory Construction*

We begin our analysis by reviewing the applicable principles of statutory construction. It is axiomatic that statutory construction is a question of law. *See State ex rel. State Dep't of Highways & Pub. Trans. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2000).

Therefore, when construing a statute, our objective is to ascertain and give effect to the Legislature's intent. TEX. GOV'T CODE ANN. §§ 311.021, 311.023, 312.005 (Vernon 2005); *see also State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006); *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003); *Kroger Co. v. Keng,* 23 S.W.3d 347, 349 (Tex. 2000). In discerning that intent, we look to the plain and common meaning of the statute's words. *See Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). Further, we read the statute as a whole, not just in isolated portions. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003).

Where statutory language is unambiguous, we interpret the statute according to its terms, and give true meaning and effect to the language consistent with other provisions in the statute. *See McIntyre*, 109 S.W.3d at 745. We consider the objective the law seeks to obtain and the consequences of a particular construction. TEX. GOV'T CODE ANN. § 311.023(1), (5); *see also McIntyre*, 109 S.W.3d at 745. We should not construe a statute in a manner that will either render any provision meaningless, *see Columbia Med. Center of Las Colinas, Inc. v. Hogue,* 271 S.W.3d 238, 256 (Tex. 2008), or lead to a foolish or absurd result when another reasonable and logical alternative is available. *See Univ. of Tex. S.W. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 356 n.20 (Tex. 2004)*; see also Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex. 2004) (noting that when a statutory text is unambiguous, courts must adopt the interpretation supported by the statute's plain language unless that interpretation would lead to an absurd and unreasonable result). We also consider the legislative history in construing an unambiguous statute, *see* TEX. GOV'T CODE ANN. § 311.023(3)

(Vernon 2005), and presume the Legislature would not perform a useless act in adopting a statute. *See Webb County Appraisal Dist. v. New Laredo Hotel, Inc.*, 792 S.W.2d 952, 954 (Tex. 1990).

### IV. *Article 8.02(A) of the Texas Business Corporation Act*

In their third issue, Appellants complain that the trial court erred by not applying the applicable laws of the Turks and Caicos Islands pursuant to article 8.02(A) of the TBCA to the determination of whether the corporate veil of Black Sea should be pierced. No Texas court has specifically addressed this issue in the context Appellants now urge.

Article 8.02(A) states:

> A. A foreign corporation which shall have received a certificate of authority under this Act shall, until its certificate of authority shall have been revoked in accordance with the provisions of this Act or until a certificate of withdrawal shall have been issued by the Secretary of State as provided in this Act, enjoy the same, but no greater, rights and privileges as a domestic corporation organized for the purposes set forth in the application pursuant to which such certificate of authority is issued; and, as to all matters affecting the transaction of intrastate business in this State, it and its officers and directors shall be subject to the same duties, restrictions, penalties, and liabilities now or hereafter imposed upon a domestic corporation of like character and its officers and directors; *provided, however, that only the laws of the jurisdiction of incorporation of a foreign corporation shall govern* (1) the internal affairs of the foreign corporation, including but not limited to the rights, powers, and duties of its board of directors and shareholders and matters relating to its shares, and (2) *the liability, if any, of shareholders of the foreign corporation for the debts, liabilities, and obligations of the foreign corporation* for which they are not otherwise liable by statute or agreement.

TEX. BUS. CORP. ACT ANN. art. 8.02(A) (Vernon 2003) (emphasis added). In 1989, the Legislature deemed it necessary to amend article 8.02(A) to address and clarify the

limited circumstances under which veil piercing claims could be asserted against a shareholder of a foreign corporation. *See* Acts 1955, 54th Leg., ch. 64, effective September 6, 1955; *amended by* Acts 1989, 71st Leg., ch. 801, § 40, effective August 28, 1989; *see also Willis,* 199 S.W.3d at 271-72. The scope and intent of article 8.02(A) is now clearly defined: the laws of a foreign corporation's state or place of incorporation, not Texas law, shall govern the adjudication and disposition of shareholder liability and other veil piercing claims against shareholders that involve the debts, liabilities, and obligations of the corporation. Although Texas courts have applied the laws of other states in determining veil piercing issues under article 8.02(A),[1] we are confronted with the assertion of veil piercing claims involving an entity (Black Sea) that was incorporated in a foreign country. Nevertheless, the issues we must resolve go beyond Black Sea's corporate formation.

Here, although Appellants served as either officers or directors of Black Sea, they were never shareholders. UHC contends that non-shareholder officers and directors of a foreign corporation are and should be excluded from the scope and protections afforded to shareholders under article 8.02(A) because although directors are referred to in article 8.02(A)(1) (addressing a foreign corporation's internal affairs),[2] neither officers nor directors are specifically mentioned in article 8.02(A)(2) (the shareholder liability section). We do not find this argument persuasive.

---

[1] *See Pride Intern., Inc., v. Bragg,* 259 S.W.3d 839, 849 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (applying Delaware law); *ASARCO LLC v. Americas Mining Corp.,* 382 B.R. 49, 64-65 (S.D. Tex. 2007) (applying New Jersey law); *In re Kilroy,* 357 B.R. 411, 425 (Bankr. S.D. Tex. 2006) (applying Delaware law).

[2] The evidence UHC presented at trial focused extensively on the internal affairs of Black Sea. Here, the status of Black Sea's internal affairs is of no consequence to the issues this Court must address.

It is not surprising that the Legislature referred only to shareholders when it enacted and later amended article 8.02(A) because veil piercing claims are primarily asserted against shareholders, not non-shareholder officers and directors. Consequently, should officers and directors who are *non-shareholders* of a corporate entity be subject to the same veil piercing theories? Although some Texas state and federal courts have addressed whether traditional veil piercing claims may be pursued against non-shareholders,[3] the extent to which these theories can be utilized to impose individual liability on a non-shareholder for corporate debts, liabilities, and obligations remains unclear.[4] Having considered the unique circumstances presented in this action and the statutory scheme at issue, we believe the veil piercing theories and principles that are available and used to hold shareholders individually liable for the debts, liabilities, and obligations of a foreign corporation under article 8.02(A) should apply equally and in the same manner to non-shareholder officers and directors of that entity.

Certain provisions of the Business Organizations Code, the successor to the TBCA, are also instructive and mirror the language and intent of article 8.02(A).[5] The

---

[3] *See Bollore S.A. v. Import Warehouse, Inc*., 448 F.3d 317, 325-26 (5th Cir. 2006) ("[t]he great weight of Texas precedent indicates that, for the alter ego doctrine to apply against an individual…, the individual must own stock in the corporation."); *see also Stewart & Stevenson Servs. v. Serv-Tech,* 879 S.W.2d 89, 108 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *Lane v. Dickinson State Bank,* 605 S.W.2d 652-53 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ); *Patterson v. Wizowaty,* 505 S.W.2d 425, 428 (Tex. Civ. App.— Houston [14th Dist.] 1974, no writ); *George v. Houston Boxing Club, Inc.,* 423 S.W.2d 128, 132 (Tex. Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.).

[4] In the past, the "single business enterprise" theory was applied by some Texas courts to hold non-shareholder corporate affiliates liable for the corporation's debts, liabilities, and obligations. We note that the Texas Supreme Court recently rejected this theory and its application. *See SSP Partners v. Gladstrong Invs. (USA) Corp.,* 275 S.W.3d 444, 455-56 (Tex. 2008).

[5] The Legislature enacted the Business Organizations Code in 2003, effectively reorganizing and recodifying the Texas statutes governing business entities into a single Code. Although enacted in 2003,

Business Organizations Code explicitly states that the laws of a foreign corporation's state or place of incorporation shall apply when determining the liability of a managerial official (i.e., an officer or director of a corporation) or a shareholder, for an obligation, debt, or liability of the corporation. TEX. BUS. ORGS. CODE ANN. § 1.104 (Vernon Pamp. 2009) ("The law of the jurisdiction that governs an entity … applies to the liability of an owner, a member, *or a managerial official of the entity* … for an obligation, including a debt or other liability, of the entity …") (emphasis added). Importantly, article 8.02(A) (*recodified in* TEX. BUS. ORGS. CODE ANN. §§ 1.101-1.106 (Vernon Pamp. 2009)) was one of the source statutes the Legislature relied on for the adoption of section 1.104, and the revisor's note further indicates that no substantive change to the source law was intended in the enactment of this section. *See* TEX. BUS. ORGS. CODE ANN. § 1.104 Revisor's Note (Vernon Pamp. 2009).

For purposes of determining individual liability in a veil piercing context under article 8.02(A), we conclude that applying the laws of a foreign corporation's state or place of incorporation to the shareholders of that entity, including shareholders who are also corporate officers and directors, while under the same circumstances requiring the laws of Texas to govern the fate of non-shareholder officers and directors of the same

the Business Organizations Code did not become effective until January 1, 2006. This delay was structured to provide a transition period during which domestic entities formed on or after January 1, 2006, and foreign entities not registered in Texas on January 1, 2006, would be governed by the Business Organizations Code. Any entity formed prior to January 1, 2006, would continue to be governed until January 1, 2010 by the pre-Code statutes under which they were formed, e.g., the TBCA, unless such entity filed with the Texas Secretary of State a "Statement of Early Adoption" and an election to be governed by the Business Organizations Code. All pre-Code statutes, including articles 8.02(A) and 2.21(A) of the TBCA, expired on January 1, 2010. Therefore, the Business Organizations Code now applies to all business entities, regardless of when such entities were formed. *See In re HRM Holdings, LLC,* 421 B.R. 244, 246 (Bankr. N.D. Tex. 2009).

foreign entity, produces an unreasonable, illogical, and absurd result and is contrary to the spirit and intent of article 8.02(A). Therefore, we hold that the scope and protections of article 8.02(A) extend and apply to non-shareholder officers and directors of a foreign corporation in the determination of their potential individual liability for that corporation's debts, liabilities, and other obligations.

### A. *Notice of Foreign Laws*

UHC contends that if the laws of the Turks and Caicos Islands (TCI) are applicable to this action, Appellants failed to properly comply with the requirements of Texas Rule of Evidence 203 regarding the laws of a foreign country. *See* TEX. R. EVID. 203. Rule 203 is a "hybrid rule" by which the presentation of foreign law to the court resembles the presentment of evidence, although the determination of its application is ultimately a question of law. *See Long Distance Int'l, Inc. v. Telefonos De Mexico, S.A.*, 49 S.W.3d 347, 351 (Tex. 2001). Nevertheless, a party who intends to rely on the laws of a foreign country under Rule 203 must provide to all parties (1) some form of notice and (2) copies of any writings or other sources that the proponent will utilize as proof of such foreign laws. It is UHC's belief that Appellants neither proffered nor requested the trial court to take judicial notice of the laws of TCI, therefore, it should be presumed that the laws of TCI and Texas are the same. We disagree.

Approximately five months prior to the commencement of trial, Appellants filed their motion for summary judgment based in part on the laws of TCI, which the trial court denied. Appellants' summary judgment evidence included deposition excerpts from UHC's retained expert, Timothy Prudhoe, a British barrister and practicing TCI

attorney. Prudhoe also prepared a comprehensive report. His deposition testimony and report explained the application and fundamental principles of the laws of TCI, and his conclusions as to Appellants' potential liability to UHC. At the trial of this action, Prudhoe's deposition testimony and report were offered by UHC and admitted into evidence without objection for all purposes. Here, UHC is a victim of its own trial strategy. As such, UHC cannot by its actions now complain that the trial court erroneously admitted this evidence. *See Halim v. Ramchandani,* 203 S.W.3d 482, 492 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Voskamp v. Arnoldy,* 749 S.W.2d 113, 123-24 (Tex. App.—Houston [1st Dist.] 1987, writ denied); *Schwarte v. Bunting,* 210 S.W.2d 655, 657 (Tex. Civ. App.—Waco 1948, writ ref'd n.r.e.).

Moreover, in addition to their motion for summary judgment, at trial Appellants presented to the trial court for its consideration a voluminous trial brief on TCI law. Their brief was based substantially upon Prudhoe's deposition testimony and report. UHC did not object to this proffer. Here, we find that Appellants substantially complied with the procedures and requirements of Rule 203. Reasonable notice of Appellants' intention to rely on the laws of TCI, including the necessary proof of these laws, was provided to UHC. *See Nexen, Inc. v. Gulf Interstate Eng'g Co.,* 224 S.W.3d 412, 417-19 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Lawrenson v. Global Marine, Inc.,* 869 S.W.2d 519, 525-26 (Tex. App.—Texarkana 1993, writ denied). In fact, counsel for UHC acknowledged this at oral argument. Nevertheless, even if we are incorrect in our analysis, because UHC did not attempt to limit the trial court's consideration of the laws of TCI under this rule or the scope of the evidence that was introduced to explain

and support these laws, it has forfeited the right to complain of Appellants' use of this evidence. *See Dankowski v. Dankowski*, 922 S.W.2d 298, 303 (Tex. App.—Fort Worth 1996, writ denied).

## B. *Laws of the Turks and Caicos Islands*

The Turks and Caicos Islands, located approximately ninety (90) miles to the north of the Dominican Republic, are a common law jurisdiction which primarily follows English law. TCI has adopted ordinances that address the potential personal liability for officers and directors of corporations formed under TCI law. TCI ordinances are comparable to our statutes. Under TCI law, it is a fundamental principle that a validly constituted and operated corporate entity has its own legal existence and limited liability. *See Salomon v. A. Salomon & Co. Ltd*., [1897] AC 22 HL (E).

In most jurisdictions, including Texas, the circumstances under which an officer or director may be held personally liable for the debts, liabilities, or obligations of the corporation are limited. Similarly, the circumstances for imposing personal liability under TCI law are also restricted. According to Prudhoe, UHC's retained expert on TCI law, the circumstances required to pierce the corporate veil under TCI law are limited to when:

- The officer or director acted *ultra vires*;

- The articles of association provide for unlimited officer or director liability;

- Upon the winding up of the corporation, monies are to be recovered from the officer or director that belong to the corporation;

- Debts are incurred by the officer or director if the corporation is insolvent;

- The officer or director has personally committed a tortious activity that would be tantamount to actual fraud;

- The officer or director voluntarily assumes personal liability for the corporation's torts;

- The officer or director procures or induces the corporation to commit a tort; and

- The officer or director has given a personal guarantee.

Prudhoe's testimony, conclusions, and the substance of his report were undisputed. Consequently, in order to establish a valid claim against Appellants under TCI law, it was incumbent upon UHC to prove that any of the listed circumstances were applicable. We have thoroughly reviewed the record before us and it is clear that UHC failed to present any evidence that would support a right to recovery.

There is no evidence that Appellants acted *ultra vires*, or contrary to the stated objectives of Black Sea. There is no evidence that Appellants had unlimited liability pursuant to Black Sea's articles of association, or that they provided any personal guarantee. There is no evidence that Appellants owed any monies or were financially indebted to Black Sea upon its winding up, or that Black Sea was insolvent when UHC's underlying causes of action accrued. Additionally, there is no evidence that Appellants voluntarily assumed any personal liability for the judgment rendered against Black Sea in the first suit or for any tortious acts allegedly committed by Black Sea. Yet, other circumstances further preclude UHC's ability to recover against Appellants.

This is an action to enforce and collect a judgment taken against Black Sea in the first suit for its breach of the Subscription Agreement, not for its alleged tortious activities. Indeed, UHC believes that Appellants engaged in fraudulent conduct and

because of their alleged conduct they should each be individually liable to it for this judgment. Nevertheless, in its responses to Appellants' request for admissions, UHC admitted that Appellants had not committed an actual fraud against it. In fact, UHC conceded it had no right of recovery against Appellants for fraud or any other relevant cause of action because it had previously litigated these claims, unsuccessfully, in the first suit. Consequently, UHC's admissions are conclusive and further dispositive as to these issues. *See* TEX. R. CIV. P. 198.3.

UHC presented no evidence that would allow it to recover against Appellants under any applicable TCI theory or law. In fact, the uncontroverted testimony, conclusions, and report of UHC's retained expert even supports Appellants' contentions. Therefore, if the laws of TCI apply to this action pursuant to article 8.02(A), Appellants would not be individually liable to UHC for the judgment taken against Black Sea. Appellants' third issue is sustained.

### V. *Article 2.21(A) of the Texas Business Corporation Act*

In their fourth issue, Appellants further complain that the trial court erred by refusing to apply the standards set forth in article 2.21(A) of the TBCA. This statute requires an affirmative finding of actual fraud in order to pierce the corporate veil when, like in this action, a contractual obligation of the corporation or any matter that relates to or arises from such obligation is involved. *See Willis*, 199 S.W.3d at 271-72 (recognizing that article 2.21 limits *Castleberry's* application); *Priddy v. Rawson*, 282 S.W.3d 588, 600 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *Dick's Last Resort*, 273 S.W.3d at 909-10. Article 2.21(A) states in part:

A.   A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, *or any affiliate thereof or of the corporation*, shall be under no obligation to the corporation or to its obligees with respect to:

.   .   .

(2)   any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, owner, subscriber, or *affiliate* is or was the alter ego of the corporation, or on the basis of actual fraud or constructive fraud, a sham to perpetrate a fraud, or other similar theory, unless the obligee demonstrates that the holder, owner, subscriber, or *affiliate* caused the corporation to be used for the purpose of *perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the* holder, owner, subscriber, or *affiliate*; or

.   .   .

TEX. BUS. CORP. ACT ANN. art. 2.21(A) (Vernon 2003) (*recodified in* TEX. BUS. ORGS. CODE ANN. §§ 21.223-21.226 (Vernon Pamp. 2009)) (emphasis added).  We must initially determine if the Legislature intended to include non-shareholder officers and directors of a corporation within the scope of this statute.  Consistent with our interpretation of article 8.02(A), we hold that it did.

Article 2.21(A) was amended by the Legislature in 1997 to include the phrase "any *affiliate* thereof or of the corporation."  This amendment expanded the classification of persons previously covered by that article.  *See* Acts 1955, 54th Leg., ch. 64, effective September 6, 1955; *amended by* Acts 1997, 75th Leg., ch. 375, § 7, effective September 1, 1997.  Central to our analysis is the interpretation of the term "affiliate."  UHC contends that an "affiliate" under article 2.21(A) should not include non-shareholder officers and directors of the corporation unless they are affiliates of

shareholders, owners of any beneficial interests in the shares, or subscribers of shares whose subscription has been accepted. We disagree. The plain and intended meaning of "affiliate" as article 2.21(A) and its amendments reflect, also encompasses any *individual* who is affiliated with (1) a shareholder of the corporation, (2) a beneficial owner or subscriber of shares of the corporation, or (3) simply the corporation itself in some capacity, which we hold includes officers and directors.

The Business Organizations Code defines "affiliate" as "a *person* who controls, is controlled by, or is under common control with another person." *See* TEX. BUS. ORGS. CODE ANN. § 1.002(1) (Vernon Pamp. 2009) (emphasis added). This definition is derived from the Federal Securities Act of 1933, and was not intended to be substantively different from the TBCA's definition of "affiliate." *See* TEX. BUS. ORGS. CODE ANN. § 1.002(1) Revisor's Note (Vernon Pamp. 2009); *see also* TEX. BUS. CORP. ACT ANN. art. 13.02(A)(1) (Vernon 2003) (defining "affiliate" as "a *person* who … controls, is controlled by, or is under common control with a specified person.") (emphasis added). Further, relevant and controlling statutes define a "person" to include an individual. *See* TEX. BUS. ORGS. CODE ANN. § 1.002(69-b) (Vernon Pamp. 2009); *see also* TEX. BUS. CORP. ACT ANN. art. 13.02(A)(7) (Vernon 2003). Therefore, it logically follows that an "affiliate" must also include individuals. Moreover, it is significant that the concept of an "affiliate" has been generally understood to encompass officers and directors. *C.f.* 17 C.F.R. § 230.144(a)(1) (defining an "affiliate" of an issuer as "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under

common control with, such issuer"). We agree with this concept and hold that the term "affiliate" encompasses and includes officers and directors of the corporation.

We further conclude that in order to give proper meaning and effect to the Legislature's amendment to article 2.21(A), the term "affiliate" must also be extended to include affiliates of the corporation or the phrase "thereof or of the corporation" is rendered meaningless. *See In re Moore*, 379 B.R. 284, 291 n.6 (Bankr. N.D. Tex. 2007) ("In 1997, the legislature added 'affiliates' of the corporation, of the shareholders, of the owners of beneficial interests in shares, and subscribers of shares to the list of parties to whom § 2.21(A) applies (which, as of 1993, already included shareholders, beneficial interest holders, and subscribers of shares)."). The word "thereof" links "affiliate" to the antecedent category of parties, i.e., shareholders, owners of beneficial interests in shares, or subscribers of shares. The phrase "or of the corporation" relates "affiliate" solely to the corporation itself. Clearly, the phrase "or of the corporation" would be of no consequence if the affiliate relationship was limited only to shareholders, beneficial owners, and subscribers. In this instance, we do not believe that the Legislature intended to enact a statute with such a limited application, effect, and purpose and we decline to construe it so narrowly. Therefore, we hold that non-shareholder officers and directors are also affiliates of the corporation under article 2.21(A). Consequently, Appellants are affiliates of Black Sea for purposes of article 2.21(A)'s application.

Because of their status as affiliates, in order to pierce the corporate veil of Black Sea, UHC was required to establish that Appellants not only caused Black Sea to be used for the purpose of perpetrating an actual fraud, they did in fact perpetrate an

actual fraud on UHC primarily for their own direct personal benefit. *See* TEX. BUS. CORP. ACT. art. 2.21(A)(2) (Vernon 2003); *see also Priddy,* 282 S.W.3d at 600-01; *Dick's Last Resort,* 273 S.W.3d at 909; *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.,* 237 S.W.3d 379, 389 (Tex. App.—Houston [14th Dist.] 2007, no pet.). UHC was clothed with this burden of proof. As such, UHC was obligated to request the submission of the necessary questions in the trial court's charge and to obtain affirmative jury findings of actual fraud against Appellants. *See Dick's Last Resort,* 273 S.W.3d at 911-13; *Huff v. Harrell,* 941 S.W.2d 230, 237 (Tex. App.—Corpus Christi 1996, writ denied); *see also* TEX. R. CIV. P. 273, 274. UHC did neither. Although the jury found that Appellants had committed constructive fraud, such a finding cannot support the recovery UHC seeks against them. Constructive fraud and actual fraud are independent causes of action and a finding of constructive fraud will neither establish nor support a finding of actual fraud. *See Archer v. Griffith,* 390 S.W.2d 735, 740 (Tex. 1964); *Cotton v. Weatherford Bancshares, Inc.,* 187 S.W.3d 687, 696 (Tex. App.—Fort Worth 2006, pet. denied); *Flanary v. Mills,* 150 S.W.3d 785, 795 (Tex. App.—Austin 2004, pet. denied).

Here, the failure to request and obtain affirmative jury findings of actual fraud against Appellants is fatal to UHC's recovery pursuant to article 2.21(A). Nevertheless, even if the jury had been properly charged, the record is silent as to any evidence of an actual fraud committed by Appellants or that any such fraud would have been for Appellants' direct personal benefit. Further, UHC conclusively admitted that Appellants had not committed an actual fraud against it. *See* TEX. R. CIV. P. 198.3.

Therefore, if article 2.21(A) applies to this action, UHC's claims to pierce the corporate veil of Black Sea would also fail. Appellants' fourth issue is sustained.

## VI. *Choice of Law and Conclusion*

It is not necessary for us to determine whether TCI or Texas law should apply to the piercing claims asserted by UHC because, under either statute, these claims fail and the disposition of this appeal would be the same. *See generally Duncan v. Cessna*, 665 S.W.2d 414, 419 (Tex. 1984) (noting that before undertaking a choice of law analysis, the court must determine whether different results would be produced under the laws of the competing jurisdictions). We conclude the trial court erred in denying Appellants' motions for judgment notwithstanding the verdict. Appellants' third and fourth issues are sustained. In light of our holding, we need not address Appellants' remaining issues. *See* TEX. R. APP. P. 47.1.

Accordingly, the judgment of the trial court is reversed and judgment is rendered that UHC take nothing on its claims against Appellants. *See* TEX. R. APP. P. 43.3.


W. STACY TROTTER
Judge

Before Chief Justice Gray,
     Justice Reyna, and
     Judge Trotter[6]
Reversed and rendered
Opinion delivered and filed May 26, 2010
[CV06]

---

[6] The Honorable W. Stacy Trotter, Judge of the 244th District Court of Ector County, sitting by assignment of the Chief Justice of the Supreme Court of Texas pursuant to section 74.003(h) of the Government Code. *See* TEX. GOV'T CODE ANN. § 74.003(h) (Vernon 2005).