**Affirmed and Majority and Dissenting Opinions filed June 4, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00534-CV

---

### BAKER HUGHES INCORPORATED, Appellant

### V.

### ROBERT E. BROOKS, Appellee

---

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2012-02744**

---

## M A J O R I T Y   O P I N I O N

This appeal asks whether an individual who signs a contract on behalf of a Delaware corporation that has forfeited its corporate charter concedes personal jurisdiction in Texas under the contract's forum selection clause. Baker Hughes Inc. sued Robert E. Brooks on a promissory note that he signed as president of Delphi Consulting, Inc. The trial court granted Brooks's special appearance and dismissed Baker's Hughes's lawsuit. We affirm.

*Background*

The parties generally agree on the underlying facts pertinent to this appeal. As president of Delphi, Brooks signed both a settlement agreement—settling a dispute between Delphi and BJ Services Company, U.S.A. (a Baker Hughes subsidiary)—and a promissory note required by the settlement agreement. In the promissory note, Delphi promised to pay Baker Hughes $123,302.04 in 24 monthly installments of $5,464.82 each, beginning on January 31, 2011. The note also contained a forum selection clause stating that the "venue for any dispute concerning this note shall be in Harris County, Texas."[1]

Delphi made the monthly payments through September 30, 2011, but on the due date for the October installment, Delphi informed Baker Hughes that it would not be able to make the payment. In November, Baker Hughes advised Delphi that it was in default on the note. On December 21, 2011, Delphi sent a check for $5,464.82, but on December 22, Baker Hughes sent a letter to Delphi accelerating all payments due under the note as authorized in the note.[2] When Delphi did not pay the full amount owed, Baker Hughes filed suit against Brooks on January 13, 2012 in Harris County, Texas.[3]

On February 16, 2012, Brooks filed a special appearance contesting personal jurisdiction over him in Texas. In the special appearance and accompanying affidavit, Brooks, a Louisiana citizen, described in detail his connections with

[1] The settlement agreement contained a substantially similar forum selection clause.

[2] In his brief, Brooks explains that the interruption in payments was caused by an interruption in the sale of natural gas and that Delphi told Baker Hughes that as soon as sales resumed, Delphi's payments would resume. Brooks also asserts that Delphi tendered to Baker Hughes both the amount required to cure the one-month default and the subsequent month's installment. In order to resolve this appeal from the grant of a special appearance, however, we need not consider the merits of the underlying action or possible defenses.

[3] In its Original Petition, Baker Hughes named as defendant, "Robert E. Brooks d/b/a Delphi Consulting, Inc." It then used the name "Delphi" throughout to reference Brooks.

Louisiana and his lack of appreciable contact or connection with Texas. Although the settlement agreement and promissory note identified Delphi as a Louisiana corporation, Brooks states in his special appearance and affidavit that Delphi is incorporated in Delaware. In his special appearance, Brooks further states that "[w]hen suit was filed, it was learned that Delphi Consulting had fallen out of good standing in the State of Delaware; however, it has been reinstated and is now in good standing." The record also contains a certification from the Delaware Secretary of State explaining that "Delphi Consulting, Inc." was incorporated in that state in 1988 and was in good standing (with all franchise taxes paid) as of February 7, 2012.

In its response to the special appearance, Baker Hughes argued that because Delphi had forfeited its Delaware corporate charter by failing to pay franchise taxes prior to execution of the settlement agreement and note, Brooks effectively became a party to the contract and should be held to the forum selection clause contained therein. The trial court granted Brooks's special appearance and dismissed the lawsuit. The parties renew their arguments on appeal.

*Standards of Review*

Determining whether a trial court has personal jurisdiction over a defendant presents a question of law subject to de novo review. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident within the provisions of the Texas long-arm statute. *Id.*; *Cerbone v. Farb*, 225 S.W.3d 764, 766–67 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The burden then shifts to the nonresident defendant to negate all bases of personal jurisdiction asserted by the plaintiff. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007).

3

Trial courts frequently must resolve fact questions before deciding jurisdictional issues. *BMC Software*, 83 S.W.3d at 794. When, as occurred here, the trial court does not file findings of fact and conclusions of law, all facts necessary to support the trial court's ruling and supported by the evidence are implied in favor of the trial court's decision. *Id*. at 794–95. When the appellate record includes the reporter's record, if any, and the clerk's record, parties may challenge the legal and factual sufficiency of these implied findings. *Id*. at 795. If the appellate court determines that the trial court's findings are supported by sufficient evidence, or if the material facts are undisputed, then the appellate court decides as a matter of law whether those facts negate all bases for personal jurisdiction. *Id*. If evidence supports the implied findings of fact, we must uphold the trial court's judgment on any legal theory supported by the findings. *Aduli v. Aduli*, 368 S.W.3d 805, 814 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)).

Texas courts may not exercise personal jurisdiction over a nonresident defendant unless federal due process requirements and the Texas long-arm statute are satisfied. *See* Tex. Civ. Prac. & Rem. Code § 17.042(1); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 412–13 (1984). Texas courts may exercise jurisdiction over a nonresident defendant if the Texas long-arm statute authorizes the exercise of jurisdiction and the exercise of jurisdiction is consistent with federal and state due process guarantees. *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 884 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Moki Mac*, 221 S.W.3d at 574).

### *Discussion*

The only basis for personal jurisdiction Baker Hughes alleges in this lawsuit is that Brooks signed a settlement agreement and a promissory note containing

4

provisions mandating Texas as the forum for deciding any disputes under the instruments. A mandatory forum selection clause is one of several ways a party may expressly or impliedly consent to personal jurisdiction within a forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985); *Tri–State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 248 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Forum-selection clauses are generally enforceable and presumptively valid. *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (per curiam).

Baker Hughes acknowledges that Brooks signed the settlement agreement and promissory note in his capacity as president of Delphi and not in his individual capacity. Baker Hughes, however, points to authority indicating that when an individual executes a contract purportedly as an agent for a principal, knowing or with reason to know that the purported principal does not possess legal capacity to enter the contract, the purported agent in effect becomes a party to the contract and is liable for any breach thereof. *See, e.g., Marrocco v. Hill*, No. 14-10-01077-CV, 2011 WL 5009489, at *4 n.4 (Tex. App.—Houston [14th Dist.], pet. denied) (mem. op.); *Carter v. Walton*, 469 S.W.2d 462, 471 (Tex. Civ. App.—Corpus Christi 1971, writ ref'd n.r.e.); Restatement (Third) of Agency § 6.04 (2006).

Baker Hughes further points out that at the time Brooks executed the instruments on behalf of Delphi, Delphi's corporate charter had been forfeited for failure to pay franchise taxes. Delphi is incorporated under the laws of Delaware, so we look to the laws of Delaware to determine whether Delphi had the capacity to enter a contract at the time of execution. *See* Restatement (Third) of Agency § 3.04(2) & cmt. D (2006); *cf. Miller Mgmt. Co. v. State*, 140 Tex. 370, 373, 167 S.W.2d 728, 730 (1943) ("The question of whether a foreign corporation continues in existence, after the surrender of its charter, for the purpose of pending suits is to

5

be determined by the statutes and laws of the State in which the corporation was created."); *Pellow v. Cade*, 990 S.W.2d 307, 312 (Tex. App.—Texarkana 1999, no pet.) ("The capacity of a foreign corporation to defend a suit is determined by the laws of the state in which the corporation is created.").

Under Title 8, section 510 of the Delaware Code, if a corporation under the laws of that state neglects to pay required franchise taxes, its corporate charter "shall be void, and all powers conferred by law upon the corporation . . . declared inoperative." Del. Code tit. 8, § 510.[4] Baker Hughes argues that Delphi's failure to pay franchise taxes for seventeen years was not "inadvertent." Under Delaware law, the fact a corporate charter was forfeited for inadvertent failure to pay franchise taxes does not render the officer who signed the contract for the corporation personally liable absent knowledge of the forfeiture. Del. Code tit. 8, § 312; *Plummer & Co. Realtors v. Crisafi*, 533 A.2d 1242, 1245 (Del. Super. Ct.

---

[4] Section 510 reads in its entirety as follows:

**§ 510. Failure to pay tax or file a complete annual report for 1 year; charter void; extension of time**

If any corporation, accepting the Constitution of this State and coming under Chapter 1 of this title, or any corporation which has heretofore filed or may hereafter file a certificate of incorporation under said chapter, neglects or refuses for 1 year to pay the State any franchise tax or taxes, which has or have been, or shall be assessed against it, or which it is required to pay under this chapter, or shall neglect or refuse to file a complete annual franchise tax report, the charter of the corporation shall be void, and all powers conferred by law upon the corporation are declared inoperative, unless the Secretary of State, for good cause shown, shall have given further time for payment of the tax or taxes or the completion of an annual franchise tax report, in which case a certificate thereof shall be filed in the office of the Secretary of State stating the reason therefor. On or before November 30 in each year, the Secretary of State shall notify each corporation which has neglected or refused to pay the franchise tax or taxes assessed against it or becoming due during the year or has refused or neglected to file a complete annual franchise tax report, that the charter of the corporation shall become void unless such taxes are paid and such complete annual franchise tax report is filed on or before March 1 of the following year.

Del. Code tit. 8, § 510.

6

1987). Baker Hughes also contends that Brooks, as president of Delphi, either knew or should have known that Delphi had failed to pay its franchise taxes for several years preceding execution of the settlement agreement and promissory note.[5]

The very statute and case Baker Hughes relies upon, however, further explain that when a corporation renews and revives its corporate charter, any acts taken by its officers and agents (including entering into contracts on behalf of the corporation) during the time of forfeiture are thereby validated as acts of the corporation and only the corporation itself shall be liable thereon. Del. Code tit. 8, § 312(e); *Plummer & Co.*, 533 A.2d at 1245. Section 312(e) expressly provides:

> Upon the filing of the certificate [of renewal or revival] the corporation shall be renewed and revived with the same force and effect as if its certificate of incorporation had not been forfeited or void pursuant to this title, or had not expired by limitation. **Such reinstatement shall validate all contracts**, acts, matters and things made, done and performed within the scope of its certificate of incorporation by the corporation, its officers and agents during the time when its certificate of incorporation was forfeited or void pursuant to this title, or after its expiration by limitation, with the same force and effect and to all intents and purposes as if the certificate of incorporation had at all times remained in full force and effect. All real and personal property, rights and credits, which belonged to the corporation at the time its certificate of incorporation became forfeited or void pursuant to this title, or expired by limitation and which were not disposed of prior to the time of its revival or renewal shall be vested in the corporation, after its revival and renewal, as fully and amply as they were held by the corporation at and before the time its certificate of incorporation became forfeited or void pursuant to this title, or expired by limitation, and the corporation after its renewal and revival shall be as exclusively liable for all contracts, acts, matters and things made, done or performed in its

---

[5] Brooks contends that he only learned of the fact Delphi's corporate charter had been forfeited when Baker Hughes filed suit against him personally on the promissory note.

7

name and on its behalf by its officers and agents prior to its reinstatement, as if its certificate of incorporation had at all times remained in full force and effect.

Del. Code tit. 8, § 312(e). (Emphasis added)

The record here contains evidence that Delphi renewed its corporate charter prior to the filing of Brooks's special appearance. Baker Hughes filed its original petition on January 13, 2012. Citation was perfected on or about February 1, 2012.[6] A certificate from the Delaware Secretary of State confirms Delphi's corporate charter was in good standing and all required franchise taxes had been paid as of February 7, 2012. Brooks filed his special appearance on February 16, 2012. Similarly, in *Plummer & Co.*, suit was filed on December 5, 1983, and a certificate for revival was filed on January 13, 1984, prior to the defendants' filing a motion to dismiss for want of personal jurisdiction. 533 A.2d at 1244-45. In keeping with the mandatory language of Delaware Code, title 8, section 312(e), the court held that even though the renewal or revival occurred after suit was filed, the fact that the charter had been forfeited at the time the contract was signed was insufficient to establish that the signatory on the contract was a proper party in his individual capacity. *Plummer & Co.*, 533 A.2d at 1245-46.[7] As in *Plummer & Co.*, the revival or renewal of Delphi's corporate charter validated the execution of

---

[6] An affidavit in the record from the process server indicates that Brooks's "Agent" signed for the citation and attached documents on February 1, 2012. Brooks has not challenged receipt of proper service in this case.

[7] The court in *Plummer & Co.* went on to examine whether the corporation was "merely a shell" for the individual defendants, who without the corporate shield had numerous contacts with Delaware. 533 A.2d at 1246. The court concluded that the corporation was indeed just a shell and personal jurisdiction over the individual defendants was proper. *Id*. at 1247-48. Had Baker Hughes raised theories of piercing the corporate veil in this case, as grounds for finding personal jurisdiction over Brooks, our analysis of those arguments would not necessarily have been limited to Delaware law. *See generally Phillips v. United Heritage Corp.*, 319 S.W.3d 156, 161-68 (Tex. App.—Waco 2010, no pet.) (discussing issues relating to piercing the corporate veil under both Texas and foreign law as well as choice of law issues).

8

the settlement agreement and promissory note, "as if its certificate of incorporation had at all times remained in full force and effect." Del. Code tit. 8, § 312(e).[8]

Baker Hughes further argues, from a policy standpoint, that it would be unfair to permit Brooks to escape personal liability by virtue of the renewal of Delphi's corporate charter after Brooks had incurred the obligation to Baker Hughes by signing the settlement agreement and promissory note for Delphi while Delphi's charter was forfeit.[9] However, Baker Hughes's substantive arguments for personal jurisdiction in this case are based on the forfeit of Delphi's corporate charter under Delaware law. As discussed, Delaware law clearly authorizes the renewal or revival of a corporate charter for the express purpose of validating actions taken by the corporation's officers or agents during the period of forfeiture. *See* Del. Code tit. 8, § 312(e); *Plummer & Co.*, 533 A.2d at 1245-46. This is a right afforded to corporations under Delaware law.[10] Baker Hughes does not raise any other arguments, under Texas or Delaware law, for asserting personal jurisdiction over Brooks. Consequently, we overrule Baker Hughes's sole issue.

We affirm the trial court's order granting the special appearance and

---

[8] The record contains legally and factually sufficient evidence to support an implied finding by the trial court that Delphi's corporate charter has been revived or renewed. Baker Hughes does not argue otherwise.

[9] Baker Hughes suggests that this would be "judicial creation of a tool to aid a debtor in his efforts to defraud his creditors," apparently not recognizing that the holding is required by operation of Delaware Code, title 8, section 312(e). Baker Hughes also does not differentiate between personal jurisdiction and liability. *See generally ACS Partners, LLC v. Gross*, No. 01-11-00245-CV, 2012 WL 1655547, at *4 (Tex. App.—Houston [1st Dist.] May 4, 2012, no pet.) (discussing distinction between personal jurisdiction and liability). Although Brooks cites *ACS Partners* in his briefing, it is distinguishable from the present case because it dealt with a jurisdictional argument based on the Texas Tax Code and not the Delaware Code and because it did not involve a contract containing a forum selection clause. *Id.* at 3-4.

[10] In terms of policy, it is worth noting that Baker Hughes thought it was contracting with Delphi and not with Brooks as an individual, and by operation of Delaware law, the contract is between only Baker Hughes and Delphi.

dismissing Baker Hughes's lawsuit.

/s/    Martha Hill Jamison
        Justice

Panel consists of Justices Frost, Christopher, and Jamison (Frost, J., dissenting).