IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00161-CV

 

Bradford A. Phillips, Clifton 

Phillips, Ryan T. Phillips and F. 

Terry Shumate,

                                                                                    Appellants

 v.

 

United Heritage Corporation, a 

Utah Corporation,

                                                                                    Appellee

 

 



From the 249th District Court

Johnson County, Texas

Trial Court No. C200500312

 



Opinion










 

            It is a fundamental principle that the
corporate structure normally insulates shareholders, officers, and directors
from individual liability for the debts, liabilities, and obligations of the
corporation.  See Willis v. Donnelly, 199 S.W.3d 262, 271-72 (Tex. 2006).  Nevertheless, their abuse of this privilege can result in the “piercing of the
corporate veil” and the imposition of individual liability.  See Castleberry
v. Branscum, 721 S.W.2d 270, 271 (Tex. 1986).  Theories exist that provide
a basis for piercing the corporate veil.  However, these theories and the
attempts to utilize them are not substantive causes of action.  See Mapco,
Inc. v. Carter, 817 S.W.2d 686, 688 (Tex. 1991); Gallagher v. McClure
Bintliff, 740 S.W.2d 118, 119 (Tex. App.—Austin 1987, writ denied). 
Rather, they are a means of imposing on an individual a corporation’s liability
for an underlying cause of action.  See Dick’s Last Resort of the West End,
Inc. v. Market/Ross, Ltd., 273 S.W.3d 905, 909 (Tex. App.—Dallas 2008, pet.
denied) (citing Cox v. S. Garrett, L.L.C., 245 S.W.3d 574, 582 (Tex.
App.—Houston [1st Dist.] 2007, no pet.)).  

           In the matter before us, Bradford A.
Phillips, Clifton Phillips, Ryan T. Phillips, and F. Terry Shumate appeal from
the trial court’s judgment based on jury findings that pierced the corporate
veil of Black Sea Investments, Ltd. and held them each individually liable for
a judgment United Heritage Corporation had taken against Black Sea in a prior
suit.  In seven issues, Appellants contend that: (1) the trial court erred in
denying their motions to transfer venue; (2) the trial court erred in rejecting
the defense of res judicata asserted by Bradford A. Phillips; (3) the trial
court erred in denying their motions for judgment notwithstanding the verdict
pursuant to the applicable laws of the Turks and Caicos Islands and article
8.02(A) of the Texas Business Corporation Act; (4) the trial court erred in
denying their motions for judgment notwithstanding the verdict pursuant to
article 2.21(A) of the Texas Business Corporation Act; (5) the evidence is
legally insufficient to support the verdict of the jury and the trial court’s
judgment; (6) the evidence is factually insufficient to support the verdict of
the jury and the trial court’s judgment; and (7) the trial court submitted an
erroneous jury charge.  Because the trial court erred in determining that the
Texas Business Corporation Act did not apply to this action and UHC failed to
establish that Appellants committed actual fraud, we reverse the judgment of
the trial court and render judgment that Appellants are not individually liable
to UHC for the prior judgment entered against Black Sea.

I.   Factual and Procedural History

            Black Sea Investments, Ltd. was
incorporated as an exempt company in the Turks and Caicos Islands on July 30,
1993.  The laws under which it was formed required that Black Sea maintain its
primary operations outside the territorial boundaries of those Islands.  During its existence, Appellants at various and relevant periods of time served
as either an officer or director of this corporation.  However, Appellants were
never shareholders in Black Sea.  United Heritage Corporation (UHC) is a Utah
Corporation and publicly traded entity in the NASDAQ capital market sector.   

           Because of its exempt and foreign
corporation status, Black Sea was authorized to acquire and sell certain
unregistered securities and avoid the prolonged investment registration
requirements mandated by the Securities and Exchange Commission for similar
domestic securities transactions.  In 1997, Black Sea and UHC began negotiating
the potential private offering of certain UHC securities.  At the time, UHC’s
principal place of business was located in Cleburne, Johnson County, Texas.  On or about December 17, 1997, Black Sea and UHC executed a Subscription Agreement
for the purchase of $300,000.00 of UHC stock.  Pursuant to the terms of this
agreement, UHC sold 352,941 shares of its common stock to Black Sea.  A
majority of these shares were subsequently sold by Black Sea between July 16
and August 28, 1998.  It was the alleged untimely manner in which these shares
were disposed of by Black Sea that precipitated the filing of UHC’s first
suit.  

           UHC originally filed suit against Black Sea and Bradford A. Phillips asserting claims for breach of contract, common law
fraud, and statutory fraud.  UHC also sought a declaratory judgment.  After a
bench trial, the trial court found that Black Sea’s actions constituted a
breach of the Subscription Agreement.  The trial court thereafter rendered
judgment against Black Sea solely on the breach of contract claim and awarded
UHC $2,000,000.00 in damages, plus attorney’s fees, costs, and interest.  The
trial court further concluded that Bradford A. Phillips was not personally
liable to UHC under any theory alleged.  An appeal ensued and this Court
affirmed the trial court’s judgment.  See United Heritage Corp. v. Black Sea
Invs., Ltd., No. 10-03-00139-CV, 2005 WL 375443 (Tex. App.—Waco February
16, 2005, no pet.) (mem. op.). 

            UHC eventually proceeded to execute
and collect the judgment it had secured against Black Sea in the first suit. 
These efforts were unsuccessful.  As a result, UHC filed the present action to
enforce this judgment against Black Sea.  Additionally, UHC sought to pierce
the corporate veil of Black Sea claiming that Appellants utilized Black Sea:
(1) as their alter ego; (2) as a sham to perpetrate a fraud; (3) to evade an
existing legal obligation; and (4) as a means to justify a wrong.  See Castleberry,
supra.  In response, Appellants contended, inter alia, that the
Texas Business Corporation Act (TBCA) governed the disposition of these
claims.  Specifically, Appellants contended that the claims UHC had asserted
against them were subject to and barred by the laws of the Turks and Caicos
Islands pursuant to article 8.02(A) of the TBCA or, alternatively, by article
2.21(A) of the TBCA.  The trial court rejected Appellants’ contentions and
charged the jury pursuant to the Castleberry principles.  UHC prevailed
on each charged theory.  The jury’s verdict effectively pierced the corporate
veil of Black Sea and held Appellants individually liable for the judgment UHC
had taken against Black Sea in the first suit.  The trial court entered
judgment on the jury’s verdict and this appeal followed.  Black Sea defaulted
and did not appeal the judgment entered against it.    

II.   Standard of Review

            The denial of a motion for judgment
notwithstanding the verdict is reviewed under a no-evidence standard.  Tanner
v. Nationwide Mut. Fire Ins. Co., 289 S.W.3d 828, 830 (Tex. 2009) (citing
City of Keller v. Wilson, 168 S.W.3d 802, 823 (Tex. 2005)).  We credit
evidence favoring the jury verdict if reasonable jurors could, and disregard
contrary evidence unless reasonable jurors could not.  Tanner, 289
S.W.3d at 830 (citing Central Ready Mix Concrete Co. v. Islas, 228
S.W.3d 649, 651 (Tex. 2007)).  We will uphold a judgment based on the jury's
finding if more than a scintilla of competent evidence supports it.  Id. (citing Wal-Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex. 2003) (per curiam)).  Therefore, we must decide whether the evidence presented at
trial could allow reasonable and fair-minded people to reach the verdict under
review.  Id. (citing City of Keller, 168 S.W.3d at 827).

III.   Statutory Construction

           We begin our analysis by reviewing the
applicable principles of statutory construction.  It is axiomatic that
statutory construction is a question of law.  See State ex rel. State Dep’t
of Highways & Pub. Trans. v. Gonzalez, 82 S.W.3d 322, 327 (Tex. 2000).  Therefore, when construing a statute, our objective is to ascertain and give
effect to the Legislature’s intent.  Tex.
Gov’t Code Ann. §§ 311.021, 311.023, 312.005 (Vernon 2005); see also
State v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006); McIntyre v. Ramirez,
109 S.W.3d 741, 745 (Tex. 2003); Kroger Co. v. Keng, 23 S.W.3d 347, 349
(Tex. 2000).  In discerning that intent, we look to the plain and common
meaning of the statute’s words.  See Tex. Dep’t of Transp. v. City of Sunset Valley, 146 S.W.3d 637, 642 (Tex. 2004).  Further, we read the statute as a whole,
not just in isolated portions.  See City of San Antonio v. City of Boerne, 111 S.W.3d 22, 25 (Tex. 2003).  

           Where statutory language is
unambiguous, we interpret the statute according to its terms, and give true
meaning and effect to the language consistent with other provisions in the
statute.  See McIntyre, 109 S.W.3d at 745.  We consider the objective
the law seeks to obtain and the consequences of a particular construction.  Tex. Gov’t Code Ann. § 311.023(1), (5);
see also McIntyre, 109 S.W.3d at 745.  We should not construe a statute
in a manner that will either render any provision meaningless, see Columbia
Med. Center of Las Colinas, Inc. v. Hogue, 271 S.W.3d 238, 256 (Tex. 2008),
or lead to a foolish or absurd result when another reasonable and logical
alternative is available.  See Univ. of Tex. S.W. Med. Ctr. at Dallas v. Loutzenhiser, 140 S.W.3d 351, 356 n.20 (Tex. 2004); see also Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc., 145 S.W.3d
170, 177 (Tex. 2004) (noting that when a statutory text is unambiguous, courts
must adopt the interpretation supported by the statute's plain language unless
that interpretation would lead to an absurd and unreasonable result).  We also
consider the legislative history in construing an unambiguous statute, see
Tex. Gov’t Code Ann. § 311.023(3)
(Vernon 2005), and presume the Legislature would not perform a useless act in
adopting a statute.  See Webb County Appraisal Dist. v. New Laredo Hotel,
Inc., 792 S.W.2d 952, 954 (Tex. 1990).  

IV.   Article 8.02(A) of the Texas Business
Corporation Act

            In their third issue, Appellants
complain that the trial court erred by not applying the applicable laws of the
Turks and Caicos Islands pursuant to article 8.02(A) of the TBCA to the
determination of whether the corporate veil of Black Sea should be pierced.  No
 Texas court has specifically addressed this issue in the context Appellants
now urge.  

           Article 8.02(A) states:  

A.  A foreign corporation which shall have
received a certificate of authority under this Act shall, until its certificate
of authority shall have been revoked in accordance with the provisions of this
Act or until a certificate of withdrawal shall have been issued by the
Secretary of State as provided in this Act, enjoy the same, but no greater,
rights and privileges as a domestic corporation organized for the purposes set
forth in the application pursuant to which such certificate of authority is
issued; and, as to all matters affecting the transaction of intrastate business
in this State, it and its officers and directors shall be subject to the same
duties, restrictions, penalties, and liabilities now or hereafter imposed upon
a domestic corporation of like character and its officers and directors; provided,
however, that only the laws of the jurisdiction of incorporation of a foreign
corporation shall govern (1) the internal affairs of the foreign
corporation, including but not limited to the rights, powers, and duties of its
board of directors and shareholders and matters relating to its shares, and (2)
the liability, if any, of shareholders of the foreign corporation for the
debts, liabilities, and obligations of the foreign corporation for
which they are not otherwise liable by statute or agreement.

 

Tex. Bus. Corp. Act Ann. art. 8.02(A) (Vernon 2003) (emphasis added).  In
1989, the Legislature deemed it necessary to amend article 8.02(A) to address
and clarify the limited circumstances under which veil piercing claims could be
asserted against a shareholder of a foreign corporation.  See Acts 1955,
54th Leg., ch. 64, effective September 6, 1955; amended by Acts 1989,
71st Leg., ch. 801, § 40, effective August 28, 1989; see also Willis, 199
S.W.3d at 271-72.  The scope and intent of article 8.02(A) is now clearly
defined: the laws of a foreign corporation’s state or place of incorporation,
not Texas law, shall govern the adjudication and disposition of shareholder
liability and other veil piercing claims against shareholders that involve the
debts, liabilities, and obligations of the corporation.  Although Texas courts have applied the laws of other states in determining veil piercing issues
under article 8.02(A),[1] we are
confronted with the assertion of veil piercing claims involving an entity (Black Sea) that was incorporated in a foreign country.  Nevertheless, the issues we must
resolve go beyond Black Sea’s corporate formation.  

           Here, although Appellants served as
either officers or directors of Black Sea, they were never shareholders.  UHC
contends that non-shareholder officers and directors of a foreign corporation
are and should be excluded from the scope and protections afforded to
shareholders under article 8.02(A) because although directors are referred to
in article 8.02(A)(1) (addressing a foreign corporation’s internal affairs),[2] neither officers nor directors
are specifically mentioned in article 8.02(A)(2) (the shareholder liability
section).  We do not find this argument persuasive.  

            It is not surprising that the
Legislature referred only to shareholders when it enacted and later amended
article 8.02(A) because veil piercing claims are primarily asserted against
shareholders, not non-shareholder officers and directors.  Consequently, should
officers and directors who are non-shareholders of a corporate entity be
subject to the same veil piercing theories?  Although some Texas state and
federal courts have addressed whether traditional veil piercing claims may be
pursued against non-shareholders,[3] the
extent to which these theories can be utilized to impose individual liability
on a non-shareholder for corporate debts, liabilities, and obligations remains
unclear.[4] 
Having considered the unique circumstances presented in this action and the
statutory scheme at issue, we believe the veil piercing theories and principles
that are available and used to hold shareholders individually liable for the
debts, liabilities, and obligations of a foreign corporation under
article 8.02(A) should apply equally and in the same manner to non-shareholder
officers and directors of that entity.

            Certain provisions of the Business
Organizations Code, the successor to the TBCA, are also instructive and mirror
the language and intent of article 8.02(A).[5] 
The Business Organizations Code explicitly states that the laws of a foreign
corporation’s state or place of incorporation shall apply when determining the
liability of a managerial official (i.e., an officer or director of a
corporation) or a shareholder, for an obligation, debt, or liability of the
corporation.  Tex. Bus. Orgs. Code Ann.
§ 1.104 (Vernon Pamp. 2009) (“The law of the jurisdiction that governs an
entity … applies to the liability of an owner, a member, or a managerial
official of the entity … for an obligation, including a debt or other
liability, of the entity …”) (emphasis added).  Importantly, article 8.02(A) (recodified
in Tex. Bus. Orgs. Code Ann.
§§ 1.101-1.106 (Vernon Pamp. 2009)) was one of the source statutes the
Legislature relied on for the adoption of section 1.104, and the revisor’s note
further indicates that no substantive change to the source law was intended in
the enactment of this section.  See Tex.
Bus. Orgs. Code Ann. § 1.104 Revisor’s Note (Vernon Pamp. 2009).  

           For purposes of determining individual
liability in a veil piercing context under article 8.02(A), we conclude that
applying the laws of a foreign corporation’s state or place of incorporation to
the shareholders of that entity, including shareholders who are also corporate
officers and directors, while under the same circumstances requiring the laws
of Texas to govern the fate of non-shareholder officers and directors of the
same foreign entity, produces an unreasonable, illogical, and absurd result and
is contrary to the spirit and intent of article 8.02(A).  Therefore, we hold
that the scope and protections of article 8.02(A) extend and apply to
non-shareholder officers and directors of a foreign corporation in the
determination of their potential individual liability for that corporation’s
debts, liabilities, and other obligations.   

A.   Notice of Foreign Laws

            UHC contends that if the laws of the Turks and Caicos Islands (TCI) are applicable to this action, Appellants failed to properly
comply with the requirements of Texas Rule of Evidence 203 regarding the laws
of a foreign country.  See Tex.
R. Evid. 203.  Rule 203 is a “hybrid rule” by which the presentation of
foreign law to the court resembles the presentment of evidence, although the
determination of its application is ultimately a question of law.  See Long
Distance Int’l, Inc. v. Telefonos De Mexico, S.A., 49 S.W.3d 347, 351 (Tex. 2001).  Nevertheless, a party who intends to rely on the laws of a foreign country
under Rule 203 must provide to all parties (1) some form of notice and (2)
copies of any writings or other sources that the proponent will utilize as
proof of such foreign laws.  It is UHC’s belief that Appellants neither
proffered nor requested the trial court to take judicial notice of the laws of
TCI, therefore, it should be presumed that the laws of TCI and Texas are the same.  We disagree.  

            Approximately five months prior to the
commencement of trial, Appellants filed their motion for summary judgment based
in part on the laws of TCI, which the trial court denied.  Appellants’ summary
judgment evidence included deposition excerpts from UHC’s retained expert, Timothy
Prudhoe, a British barrister and practicing TCI attorney.  Prudhoe also
prepared a comprehensive report.  His deposition testimony and report explained
the application and fundamental principles of the laws of TCI, and his
conclusions as to Appellants’ potential liability to UHC.  At the trial of this
action, Prudhoe’s deposition testimony and report were offered by UHC and
admitted into evidence without objection for all purposes.  Here, UHC is a
victim of its own trial strategy.  As such, UHC cannot by its actions now
complain that the trial court erroneously admitted this evidence.  See
Halim v. Ramchandani, 203 S.W.3d 482, 492 (Tex. App.—Houston [14th Dist.]
2006, no pet.); Voskamp v. Arnoldy, 749 S.W.2d 113, 123-24 (Tex.
App.—Houston [1st Dist.] 1987, writ denied); Schwarte v. Bunting, 210
S.W.2d 655, 657 (Tex. Civ. App.—Waco 1948, writ ref’d n.r.e.).  

           Moreover, in addition to their motion
for summary judgment, at trial Appellants presented to the trial court for its
consideration a voluminous trial brief on TCI law.  Their brief was based
substantially upon Prudhoe’s deposition testimony and report.  UHC did not
object to this proffer.  Here, we find that Appellants substantially complied
with the procedures and requirements of Rule 203.  Reasonable notice of
Appellants’ intention to rely on the laws of TCI, including the necessary proof
of these laws, was provided to UHC.  See Nexen, Inc. v. Gulf Interstate
Eng’g Co., 224 S.W.3d 412, 417-19 (Tex. App.—Houston [1st Dist.] 2006, no
pet.); Lawrenson v. Global Marine, Inc., 869 S.W.2d 519, 525-26 (Tex.
App.—Texarkana 1993, writ denied).  In fact, counsel for UHC acknowledged this
at oral argument.  Nevertheless, even if we are incorrect in our analysis,
because UHC did not attempt to limit the trial court’s consideration of the
laws of TCI under this rule or the scope of the evidence that was introduced to
explain and support these laws, it has forfeited the right to complain of
Appellants’ use of this evidence.  See Dankowski v. Dankowski, 922 S.W.2d
298, 303 (Tex. App.—Fort Worth 1996, writ denied).    

B.   Laws of the Turks and Caicos Islands

           The Turks and Caicos Islands, located
approximately ninety (90) miles to the north of the Dominican Republic, are a
common law jurisdiction which primarily follows English law.  TCI has adopted
ordinances that address the potential personal liability for officers and
directors of corporations formed under TCI law.  TCI ordinances are comparable
to our statutes.  Under TCI law, it is a fundamental principle that a validly
constituted and operated corporate entity has its own legal existence and
limited liability.  See Salomon v. A. Salomon & Co. Ltd., [1897] AC
22 HL (E).

           In most jurisdictions, including Texas, the circumstances under which an officer or director may be held personally liable
for the debts, liabilities, or obligations of the corporation are limited. 
Similarly, the circumstances for imposing personal liability under TCI law are
also restricted.  According to Prudhoe, UHC’s retained expert on TCI law, the
circumstances required to pierce the corporate veil under TCI law are limited
to when: 


 The officer or director acted ultra vires;
 The articles of association provide for
 unlimited officer or director liability;
 Upon
 the winding up of the corporation, monies are to be recovered from the
 officer or director that belong to the corporation;


 


 Debts are incurred by the officer or director
 if the corporation is insolvent;
 The
 officer or director has personally committed a tortious activity that
 would be tantamount to actual fraud;


 


 The
 officer or director voluntarily assumes personal liability for the
 corporation’s torts;


 


 The officer or director procures or induces
 the corporation to commit a tort; and
 The officer or director has given a personal
 guarantee.


Prudhoe’s testimony, conclusions, and the
substance of his report were undisputed.  Consequently, in order to establish a
valid claim against Appellants under TCI law, it was incumbent upon UHC to
prove that any of the listed circumstances were applicable.  We have thoroughly
reviewed the record before us and it is clear that UHC failed to present any
evidence that would support a right to recovery. 

There is no
evidence that Appellants acted ultra vires, or contrary to the stated
objectives of Black Sea.  There is no evidence that Appellants had unlimited
liability pursuant to Black Sea’s articles of association, or that they
provided any personal guarantee.  There is no evidence that Appellants owed any
monies or were financially indebted to Black Sea upon its winding up, or that Black Sea was insolvent when UHC’s underlying causes of action accrued.  Additionally,
there is no evidence that Appellants voluntarily assumed any personal liability
for the judgment rendered against Black Sea in the first suit or for any
tortious acts allegedly committed by Black Sea.  Yet, other circumstances
further preclude UHC’s ability to recover against Appellants.  

This is an action
to enforce and collect a judgment taken against Black Sea in the first suit for
its breach of the Subscription Agreement, not for its alleged tortious
activities.  Indeed, UHC believes that Appellants engaged in fraudulent conduct
and because of their alleged conduct they should each be individually liable to
it for this judgment.  Nevertheless, in its responses to Appellants’ request
for admissions, UHC admitted that Appellants had not committed an actual fraud
against it.  In fact, UHC conceded it had no right of recovery against
Appellants for fraud or any other relevant cause of action because it had
previously litigated these claims, unsuccessfully, in the first suit. 
Consequently, UHC’s admissions are conclusive and further dispositive as to
these issues.  See Tex. R. Civ.
P. 198.3.    

UHC presented no
evidence that would allow it to recover against Appellants under any applicable
TCI theory or law.  In fact, the uncontroverted testimony, conclusions, and
report of UHC’s retained expert even supports Appellants’ contentions. 
Therefore, if the laws of TCI apply to this action pursuant to article 8.02(A),
Appellants would not be individually liable to UHC for the judgment
taken against Black Sea.  Appellants’ third issue is sustained.

V.   Article 2.21(A)
of the Texas Business Corporation Act

            In their fourth issue, Appellants further complain
that the trial court erred by refusing to apply the standards set forth in
article 2.21(A) of the TBCA.  This statute requires an affirmative finding of
actual fraud in order to pierce the corporate veil when, like in this action, a
contractual obligation of the corporation or any matter that relates to or
arises from such obligation is involved.  See Willis, 199 S.W.3d at
271-72 (recognizing that article 2.21 limits Castleberry’s application);
Priddy v. Rawson, 282 S.W.3d 588, 600 (Tex. App.—Houston [14th Dist.]
2009, pet. denied); Dick’s Last Resort, 273 S.W.3d at 909-10.  Article
2.21(A) states in part:

A.     A holder of shares, an owner of any
beneficial interest in shares, or a subscriber for shares whose subscription has
been accepted, or any affiliate thereof or of the corporation,
shall be under no obligation to the corporation or to its obligees with respect
to:

 

.            .            .

 

(2)       any contractual obligation of the
corporation or any matter relating to or arising from the obligation on the
basis that the holder, owner, subscriber, or affiliate is or was
the alter ego of the corporation, or on the basis of actual fraud or
constructive fraud, a sham to perpetrate a fraud, or other similar theory,
unless the obligee demonstrates that the holder, owner,
subscriber, or affiliate caused the corporation to be used for
the purpose of perpetrating and did perpetrate an actual fraud on the
obligee primarily for the direct personal benefit of the
holder, owner, subscriber, or affiliate; or

 

.            .            .

 

Tex. Bus. Corp. Act Ann. art. 2.21(A) (Vernon 2003) (recodified in Tex. Bus. Orgs. Code Ann. §§
21.223-21.226 (Vernon Pamp. 2009)) (emphasis added).  We must initially
determine if the Legislature intended to include non-shareholder officers and
directors of a corporation within the scope of this statute.  Consistent with
our interpretation of article 8.02(A), we hold that it did.               

           Article 2.21(A) was amended by the
Legislature in 1997 to include the phrase “any affiliate thereof or of
the corporation.”  This amendment expanded the classification of persons
previously covered by that article.  See Acts 1955, 54th Leg., ch. 64,
effective September 6, 1955; amended by Acts 1997, 75th Leg., ch. 375, §
7, effective September 1, 1997.  Central to our analysis is the interpretation
of the term “affiliate.”  UHC contends that an “affiliate” under article
2.21(A) should not include non-shareholder officers and directors of the
corporation unless they are affiliates of shareholders, owners of any
beneficial interests in the shares, or subscribers of shares whose subscription
has been accepted.  We disagree.  The plain and intended meaning of “affiliate”
as article 2.21(A) and its amendments reflect, also encompasses any individual
who is affiliated with (1) a shareholder of the corporation, (2) a beneficial
owner or subscriber of shares of the corporation, or (3) simply the corporation
itself in some capacity, which we hold includes officers and directors. 

           The Business Organizations Code defines
“affiliate” as “a person who controls, is controlled by, or is under
common control with another person.”  See Tex. Bus. Orgs. Code Ann. § 1.002(1) (Vernon Pamp. 2009)
(emphasis added).  This definition is derived from the Federal Securities Act
of 1933, and was not intended to be substantively different from the TBCA’s
definition of “affiliate.”  See Tex.
Bus. Orgs. Code Ann. § 1.002(1) Revisor’s Note (Vernon Pamp. 2009); see
also Tex. Bus. Corp. Act Ann.
art. 13.02(A)(1) (Vernon 2003) (defining “affiliate” as “a person who …
controls, is controlled by, or is under common control with a specified
person.”) (emphasis added).  Further, relevant and controlling statutes define
a “person” to include an individual.  See Tex. Bus. Orgs. Code Ann. § 1.002(69-b) (Vernon Pamp. 2009); see
also Tex. Bus. Corp. Act Ann.
art. 13.02(A)(7) (Vernon 2003).  Therefore, it logically follows that an
“affiliate” must also include individuals.  Moreover, it is significant that
the concept of an “affiliate” has been generally understood to encompass
officers and directors.  C.f. 17 C.F.R. § 230.144(a)(1) (defining an
“affiliate” of an issuer as “a person that directly, or indirectly through one
or more intermediaries, controls, or is controlled by, or is under common
control with, such issuer”).  We agree with this concept and hold that the term
“affiliate” encompasses and includes officers and directors of the
corporation.           

           We further conclude that in order to give
proper meaning and effect to the Legislature’s amendment to article 2.21(A),
the term “affiliate” must also be extended to include affiliates of the
corporation or the phrase “thereof or of the corporation” is rendered
meaningless.  See In re Moore, 379 B.R. 284, 291 n.6 (Bankr. N.D. Tex.
2007) (“In 1997, the legislature added ‘affiliates’ of the corporation, of the
shareholders, of the owners of beneficial interests in shares, and subscribers
of shares to the list of parties to whom § 2.21(A) applies (which, as of 1993,
already included shareholders, beneficial interest holders, and subscribers of
shares).”).  The word “thereof” links “affiliate” to the antecedent category of
parties, i.e., shareholders, owners of beneficial interests in shares, or subscribers
of shares.  The phrase “or of the corporation” relates “affiliate” solely to
the corporation itself.  Clearly, the phrase “or of the corporation” would be
of no consequence if the affiliate relationship was limited only to
shareholders, beneficial owners, and subscribers.  In this instance, we do not
believe that the Legislature intended to enact a statute with such a limited
application, effect, and purpose and we decline to construe it so narrowly. 
Therefore, we hold that non-shareholder officers and directors are also
affiliates of the corporation under article 2.21(A).  Consequently, Appellants
are affiliates of Black Sea for purposes of article 2.21(A)’s
application.           

           Because of their status as affiliates,
in order to pierce the corporate veil of Black Sea, UHC was required to
establish that Appellants not only caused Black Sea to be used for the purpose
of perpetrating an actual fraud, they did in fact perpetrate an actual fraud on
UHC primarily for their own direct personal benefit.  See Tex. Bus. Corp. Act. art. 2.21(A)(2)
(Vernon 2003); see also Priddy, 282 S.W.3d at 600-01; Dick’s Last
Resort, 273 S.W.3d at 909; Solutioneers Consulting, Ltd. v. Gulf
Greyhound Partners, Ltd., 237 S.W.3d 379, 389 (Tex. App.—Houston [14th Dist.]
2007, no pet.).  UHC was clothed with this burden of proof.  As such, UHC was
obligated to request the submission of the necessary questions in the trial
court’s charge and to obtain affirmative jury findings of actual fraud against
Appellants.  See Dick’s Last Resort, 273 S.W.3d at 911-13; Huff v.
Harrell, 941 S.W.2d 230, 237 (Tex. App.—Corpus Christi 1996, writ denied); see
also Tex. R. Civ. P. 273,
274.  UHC did neither.  Although the jury found that Appellants had committed
constructive fraud, such a finding cannot support the recovery UHC seeks
against them.  Constructive fraud and actual fraud are independent causes of
action and a finding of constructive fraud will neither establish nor support a
finding of actual fraud.  See Archer v. Griffith, 390 S.W.2d 735, 740 (Tex. 1964); Cotton v. Weatherford Bancshares, Inc., 187 S.W.3d 687, 696 (Tex.
App.—Fort Worth 2006, pet. denied); Flanary v. Mills, 150 S.W.3d 785,
795 (Tex. App.—Austin 2004, pet. denied).             

           Here, the failure to request and obtain
affirmative jury findings of actual fraud against Appellants is fatal to UHC’s
recovery pursuant to article 2.21(A).  Nevertheless, even if the jury had been
properly charged, the record is silent as to any evidence of an actual fraud committed
by Appellants or that any such fraud would have been for Appellants’ direct
personal benefit.  Further, UHC conclusively admitted that Appellants had not
committed an actual fraud against it.  See Tex. R. Civ. P. 198.3.  Therefore, if article 2.21(A) applies
to this action, UHC’s claims to pierce the corporate veil of Black Sea would
also fail.  Appellants’ fourth issue is sustained. 

VI.   Choice of Law and Conclusion

           It is not necessary for us to determine
whether TCI or Texas law should apply to the piercing claims asserted by UHC
because, under either statute, these claims fail and the disposition of this
appeal would be the same.  See generally Duncan v. Cessna, 665 S.W.2d
414, 419 (Tex. 1984) (noting that before undertaking a choice of law analysis,
the court must determine whether different results would be produced under the
laws of the competing jurisdictions).  We conclude the trial court erred in
denying Appellants’ motions for judgment notwithstanding the verdict. 
Appellants’ third and fourth issues are sustained.  In light of our holding, we
need not address Appellants’ remaining issues.  See Tex. R. App. P. 47.1.            

           Accordingly, the judgment of the trial
court is reversed and judgment is rendered that UHC take nothing on its claims
against Appellants.  See Tex. R.
App. P. 43.3.

 

                                                                        W.
STACY TROTTER

                                                                        Judge

 

Before
Chief Justice Gray,

            Justice
Reyna, and

            Judge
Trotter[6]

Reversed
and rendered

Opinion
delivered and filed May 26, 2010

[CV06]









[1] See
Pride Intern., Inc., v. Bragg, 259 S.W.3d 839, 849 (Tex. App.—Houston [1st
Dist.] 2008, no pet.) (applying Delaware law); ASARCO LLC v. Americas Mining
Corp., 382 B.R. 49, 64-65 (S.D. Tex. 2007) (applying New Jersey law); In
re Kilroy, 357 B.R. 411, 425 (Bankr. S.D. Tex. 2006) (applying Delaware law).

   





[2] The
evidence UHC presented at trial focused extensively on the internal affairs of Black Sea.  Here, the status of Black Sea’s internal affairs is of no consequence to the
issues this Court must address. 





[3] See
Bollore S.A. v. Import Warehouse, Inc., 448 F.3d 317, 325-26 (5th
Cir. 2006) (“[t]he great weight of Texas precedent indicates that, for the
alter ego doctrine to apply against an individual…, the individual must own
stock in the corporation.”); see also Stewart & Stevenson Servs. v.
Serv-Tech, 879 S.W.2d 89, 108 (Tex. App.—Houston [14th Dist.] 1994, writ
denied); Lane v. Dickinson State Bank, 605 S.W.2d 652-53 (Tex. Civ.
App.—Houston [1st Dist.] 1980, no writ); Patterson v. Wizowaty, 505
S.W.2d 425, 428 (Tex. Civ. App.—Houston [14th Dist.] 1974, no writ); George
v. Houston Boxing Club, Inc., 423 S.W.2d 128, 132 (Tex. Civ. App.—Houston
[14th Dist.] 1968, writ ref’d n.r.e.).

 





[4] In
the past, the “single business enterprise” theory was applied by some Texas courts to hold non-shareholder corporate affiliates liable for the corporation’s
debts, liabilities, and obligations.  We note that the Texas Supreme Court
recently rejected this theory and its application.  See SSP Partners v.
Gladstrong Invs. (USA) Corp., 275 S.W.3d 444, 455-56 (Tex. 2008).

  





[5] The
Legislature enacted the Business Organizations Code in 2003, effectively
reorganizing and recodifying the Texas statutes governing business entities
into a single Code.  Although enacted in 2003, the Business Organizations Code
did not become effective until January 1, 2006.  This delay was structured to
provide a transition period during which domestic entities formed on or after
January 1, 2006, and foreign entities not registered in Texas on January 1,
2006, would be governed by the Business Organizations Code.  Any entity formed
prior to January 1, 2006, would continue to be governed until January 1, 2010
by the pre-Code statutes under which they were formed, e.g., the TBCA, unless
such entity filed with the Texas Secretary of State a “Statement of Early
Adoption” and an election to be governed by the Business Organizations Code. 
All pre-Code statutes, including articles 8.02(A) and 2.21(A) of the TBCA,
expired on January 1, 2010.  Therefore, the Business Organizations Code now
applies to all business entities, regardless of when such entities were
formed.  See In re HRM Holdings, LLC, 421 B.R. 244, 246 (Bankr. N.D. Tex. 2009).   

 





[6]  The
Honorable W. Stacy Trotter, Judge of the 244th District Court of Ector County,
sitting by assignment of the Chief Justice of the Supreme Court of Texas
pursuant to section 74.003(h) of the Government Code.  See Tex. Gov’t Code Ann. § 74.003(h)
(Vernon 2005).